STEVEN F. GRUEL (CSBN 213148)
655 Montgomery Street, Suite 1700
San Francisco, California 94122
Telephone Number (415) 989-1253
Fax Number (415) 576-1442
attystevengruel@sbcglobal.net

Attorney for Glenio Silva

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | No. CR-07-00678-JSW |
| ) | |
| Plaintiff, ) | DEFENDANT GLENIO SILVA'S |
| ) | MOTION TO COMPEL DISCOVERY |
| Vs. ) | |
| ) | DATE: May 15, 2008 |
| GLENIO JESUA FERREIRA SILVA, ) | TIME: 2:30 p.m. |
| ) | |
| Defendant. ) | Excl. Time: 18 USC 3161(h)(1)(F) |
| ) | |

THIS IS NOTICE that on May 15, 2008, at 2:30 p.m., defendant Glenio Silva will move this Court for the following order compelling additional discovery. This motion is based on the filed Indictment, the record in this case and the arguments contained herein as well as to be presented at the hearing on this matter.

### I. INTRODUCTION

**Selective Prosecution and Equal Protection Violations**

Immigration and Customs Enforcement (ICE) has a program called worksite enforcement.[1] According to ICE's website, worksite enforcement combats serious violations of criminal

---

[1] The facts supporting this motion are from the declaration of Steven F. Gruel filed herewith.

*DEFENDANT GLENIO SILVA'S MOTION TO COMPEL DISCOVERY*

- 1

statutes by employers. In the recent past, ICE has taken an aggressive approach to worksite enforcement by investigating "*egregious employers involved in criminal activity or worker exploitation.*" ICE investigates employers who " . . . *often involve alien smuggling, document fraud, human rights abuses and/or other criminal or substantive administrative immigration or customs violations*." Worksite enforcement can be either administrative actions or criminal prosecutions.[2]

As summarized below, in Mr. Silva's case, there is absolutely no evidence whatsoever of alien smuggling, human trafficking, human rights abuse or any other "egregious" offense. Without more, the prosecution nevertheless indicted Glenio Silva for allegedly harboring six (6) illegal aliens who worked at two pizza parlors in the Bay area.

**A  Summary of the Worksite Investigation In This Case**

From the discovery thus provided it appears that since September 2006, ICE agents in San Francisco began an investigation of "Brazilian citizens who entered the United States and violated the conditions of their non-immigrant status." From the government's discovery, ICE case agent Chris Purfeerst reported that "sources of information" suggested that two pizza restaurants in the San Francisco Bay Area were operating a smuggling operation.

Significantly, as seen in agent Purfeerst official reports, an unidentified informant labeled SA-1180-SF, claimed that "Glen Silva employs illegal aliens, helps them secure counterfeit documents and aids in their obtaining California Driver's Licenses." SA-1180-SF told agent Purfeerst that Mr. Silva helped obtain fake social security cards and Puerto Rican Birth certificates in order to obtain California Driver's Licenses. This unidentified informant's story

---

[2] Administrative actions usually involve fines and warnings. Criminal prosecutions result in fines, prison time and, may include the more serious long lasting consequence of deportation.

*DEFENDANT GLENIO SILVA'S MOTION TO COMPEL DISCOVERY*

also included that Mr. Silva charged individuals $4,000.00 to obtain phony California Driver's license.

ICE agents subsequently began a full scale investigation into alien smuggling and counterfeit documents. For over five (5) months ICE agents conducted an investigation centering on two local pizza stores named Monterey Pizza in San Francisco and The Pizza House in Hayward.

ICE concluded that Mr. Silva operated two small "mom & pop" pizza restaurants in the San Francisco Bay Area. The wholly unsupported claims of his involvement in alien smuggling and counterfeit identity documents indeed proved fabricated. Nevertheless, on June 15, 2007, the government arrested and charged Mr. Silva with one count of knowingly and intentionally concealing, harboring and shielding a handful of illegal aliens. At the same time, several pizza workers were arrested for possessing counterfeit documentation, in no way connected to or obtained from Mr. Silva, or for being in the United States illegally. Mr. Silva has no criminal history. He is a citizen of Brazil and a lawful permanent resident of the United States.

**Only Two Other Worksite Cases In The District**

While there may be other *administrative* worksite enforcement actions, there appears to be only two relevant criminal ICE cases in the San Francisco Bay Area that are significant for this discovery motion.

**1. The Worksite Case of Pacific American Service (PACAM) / Port of Oakland**

The first enforcement action occurred on October 5, 2005 when ICE agents arrested Mexican nationals who were working illegally at the Pacific American Service (PACAM) warehouse and distribution center which brings goods into the United States through the Port of Oakland. ICE agents apprehended illegal Mexican workers as they reported for work at PACAM's Hayward warehouse. The illegal workers were identified after agents audited the hiring records of more

than 60 PACAM workers and found that approximately 25 percent of the employees were not authorized to work in the United States.[3] While just one employee appears to have been criminally prosecuted for illegal reentry into the United States, apparently no employer or manager at PACAM was arrested or prosecuted.

**2. The Worksite Case of Pepe's Cabinet Shop in Oakland**

The second worksite enforcement case relevant to this motion involved the November 7, 2007, raid by ICE agents of a small furniture maker's shop in Oakland. The owner allegedly employed a handful of illegal aliens from Mexico. The owner, Jose De Jesus Guzamn-Baez, also from Mexico, was arrested by ICE and was charged with alien harboring and employing illegal aliens. *see* United States v. Guzman-Baez, CR-07-00797-DLJ; CR-07-00794-DLJ. Mr. Guzman-Baez is charged with employing and harboring eight illegal aliens.

**San Francisco's Sanctuary Status – Alien Harboring With Impunity**

San Francisco has declared itself a "sanctuary city." According to a February 2, 2008 press release, the Mayor of San Francisco underscored and reaffirmed the City's policy protecting undocumented aliens by assuring them of access to local government services without fear of reporting them to ICE. In 1989, San Francisco passed the "City of Refuge" Ordinance (Sanctuary Ordinance) which prohibits City employees from assisting ICE with detection,

---

[3] Charles DeMore, then special agent-in-charge for ICE investigations in San Francisco, praised the investigation as "[A]ddressing security vulnerabilities that pose a potential threat to our nation's vital infrastructure is a crucial part of ICE's enforcement strategy." He noted that, "When someone uses fraud or false documents to gain access to a major cargo hub like the Port of Oakland, we have no way of knowing who they really are or what their motives might be. If that person turns out to be a criminal or a terrorist, they are in a position to strike a devastating blow against the flow of commerce and our nation's economy." Yet, no one was arrested for harboring or hiring illegal aliens. Mr. Silva's requests to inspect the investigative reports and learn the salient facts of this particular worksite enforcement case have been completely denied by the government.

*DEFENDANT GLENIO SILVA'S MOTION TO COMPEL DISCOVERY*

- 4

investigations and arrests unless required by federal or state law or a warrant. In February 2007, the San Francisco Mayor called on City departments to develop protocol and training on the Sanctuary Ordinance.

**The Parties Meet and Confer**

The parties have been before the Court several times and outlined the relatively free flow of discovery by the prosecution in this case. Additionally, by May 15, 2008, it is expected that at least four (4) material witness interviews will have been conducted.[4]

At the last hearing in this case, defense counsel notified the Court and government counsel that pretrial motions to suppress evidence, contest the prosecution and seek the dismissal of the indictment were anticipated. Prior to that waive of substantive motions, additional discovery beyond that already provided by the government is necessary. To that end, and in adherence to the Court's order, the parties exchanged letters containing the defendant's specific discovery requests and the government's response.

While some of the discovery issues have been addressed, several significant discovery requests remain in dispute. This motion seeks this Court's Order compelling those additional materials.

---

[4] A further clear indication of improper selective prosecution against Mr. Silva is evident in that several deposed material witnesses have testified that they told ICE agents that they also worked in other Bay Area restaurants. These have included Cable Car Pizza, Pizza Hut, Round Table Pizza, and Geneva Pizza. Yet, the prosecution either doesn't have or refuses to produce any ICE investigative reports of harboring or illegal employment at those other pizza shops. One can only assume therefore that nothing is being done with those incriminating leads.

## II. ARGUMENT

**Mr. Silva's Showing That Similarly Situated Persons Are Not Prosecuted**

Prosecutorial discretion is broad, but not without constitutional limitation. <u>Wayte v. United States</u>, 470 U.S. 598, 607 (1985). Subject to the constraints of the Equal protection Clause, the decision to prosecute may not be based on an unjustifiable standard such as race, gender, religion or other arbitrary classifications. <u>Id</u>. at 608; <u>J.E.B. v. Alabama ex. re. T.B</u>, 511 U.S. 127, 136 (1994)(holding that invidious discrimination on account of gender, no less than race or ethnicity, violates the Equal protection Clause). To be entitled to an order compelling discovery for his claim, Mr. Silva must produce "some evidence" indicating that similarly situated defendants "could have been prosecuted, but were not." <u>United States v. Armstrong</u>, 517 U.S. 456, 469 (1996).

As seen in the above showing, ICE's worksite policy and enforcement in the San Francisco region is selective and inconsistent. The only criminal cases, as opposed to the undisclosed number of administrative actions, are directed against a Brazilian and Mexican. Moreover, these two criminal prosecutions against a lone cabinet maker and small pizza owner completely fall outside ICE's more important and laudable tasks of defeating potential threats to our nation's vital infrastructure. The selectiveness and lack of equal protection in this prosecution is even more pronounced when juxtaposed against ICE's silence to the unbridled proclamation that the City of San Francisco will aggressively assist hiding illegal aliens.

Simply put, Mr. Silva submits that the decision to prosecute him has exceeded constitutional limitation. Consequently, to further his showing and support his anticipated motion to dismiss, Mr. Silva requests:

- Since 2005, all San Francisco area ICE reports of investigation, charging documents, administrative actions, declinations to prosecute, criminal, civil and administrative case numbers, and all dispositions for all worksite enforcement actions pursued or filed by ICE in the Northern District of

California, including, but not limited to, the filing of criminal charges **involving harboring illegal aliens**;

- Since 2005, all San Francisco area ICE reports of investigation, charging documents, administrative actions, declinations to prosecute, civil, criminal and administrative case numbers and dispositions for all worksite enforcement cases, brought by ICE in the Northern District of California including, but not limited to, the filing of criminal charges, **involving employment of illegal aliens**;

- Produce all ICE investigation reports, policy memoranda, discussions, declinations to prosecute, investigations of and relevant memoranda involving, discussing or pertaining to federal civil, criminal and administrative violations by the City and County of San Francisco in that it has harbored, shielded or concealed illegal aliens as a Sanctuary City since 1989.

**No Absolute Privilege To Withhold Informant SA-1180-SF's Identity**

Mr. Silva also seeks the identity, together with complete *Brady* and *Giglio* material (this includes immigration benefits) of government informant SA-1180-S. In making the determination whether disclosure of the identity of an informant/witness to a defendant is necessary, the Court must balance the public's interest in law enforcement and protecting the informant's identity against the defendant's right to prepare a defense. Roviaro v. United States, 353 U.S. 53, 62 (1957) (seminal case holding that identities of informants who are participants in charged criminal activity are subject to disclosure upon appropriate showing by the defense); United States v. Warren, 42 F.3d 647, 654 (D.C. Cir. 1994).

One of the principal factors the Court should consider in determining whether disclosure of the identity of a confidential informant is appropriate, is to distinguish between informants who are mere "tipsters" and informants who are actual participants in the charged criminal activity. McLawhorn v. North Carolina, 484 F.2d 1, 5 (4th Cir. 1973). Courts generally find that disclosure is not required where the informant plays only a small or passive role in the offense

charged, has no firsthand information, or where his potential disclosures are already known to the defendants. <u>United States v. Moreno</u>, 588 F.2d 490, 494 (5th Cir. 1978) (finding that informant played no meaningful role in the charged conduct and was thus a tipster whose identity need not be disclosed), <u>United States v. Price</u>, 783 F.2d 1132, 1139 (4th Cir. 1986) (informant active participant in deal and in unique position to observe defendant's participation in negotiations); *United States v. Smith*, 780 F.2d 1102, 1108 (4th Cir. 1985), <u>United States v. Sanchez</u>, 988 F.2d 1384, 1391-92 (5th Cir. 1993) (disclosure not essential to fair determination of guilt or innocence where informant's involvement was limited).

Here, of course, it is undisputed that SA-1180-SF not only provided extensive and utterely false "hearsay'" information, but on March 5, 2007, he met with case agent Purfeerst and provided copies of Mr. Sivla's "books." It appears that SA-1180-SF had a more direct, and possible undercover, role than a mere "tipster" in assisting ICE in this case.

Just as important, there is a question whether SA-118-SF is a former disgruntled manager and possible owner / investor of Monterey Pizza named Silvano Santos. Mr. Santos was the sole informant used to establish probable cause for the search and arrest warrants. If agent Purfeerst knew that Santos (a/k/a SA-1180-SA) provided false information and did not disclose this to the reviewing Magistrate Judge, a hearing under <u>Franks v. Delaware</u>, 438 U.S. 154 (1978) will be necessary.

### III. PROTECTIVE ORDER

The defense will agree to any reasonable protective order if necessary so as to have access to review the above materials.

### IV. CONCLUSION

Mr. Silva has made a showing, from the limited sources available, of disparate treatment in local worksite enforcement. He respectfully requests that the Court grant an order compelling the specific discovery which is easily available and within the government's possession. Likewise, there is no reason not to disclose the identity of SA-1180-SF.

Respectfully Submitted,

Dated: April 16, 2008         ____/s/_____
                              STEVEN F. GRUEL
                              Attorney for Glenio Silva