STEVEN F. GRUEL (CSBN 213148)
655 Montgomery Street, Suite 1700
San Francisco, California 94122
Telephone Number (415) 989-1253
Fax Number (415) 576-1442
attystevengruel@sbcglobal.net

Attorney for Glenio Silva

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR-07-00678-JSW |
| Plaintiff, | DEFENDANT GLENIO SILVA'S MOTION TO SUPPRESS STATEMENTS FOR VIOLATION OF THE 5TH AMENDMENT RIGHT AGAINST SELF-INCRIMINATION |
| Vs. | |
| GLENIO JESUA FERREIRA SILVA, | |
| Defendant. | Honorable Jeffrey S. White |
| | Date: August 21, 2008 @ 2:30 pm |

THIS IS NOTICE that on August 21, 2008, at 2:30 p.m., defendant Glenio Silva will move this Court for an Order suppressing post-arrest statements made to law enforcement. This motion is based on the discovery in this case, the defense declaration, the record in this case and the arguments contained herein as well as to be presented at the hearing on this matter.

## INTRODUCTION

Glenio Silva operates two small pizza shops named *Monterey Pizza* in San Francisco and *The Pizza House* in Hayward. On Friday June 15, 2007 at approximately 7:05 p.m., Mr. Silva was arrested by Immigration and Customs Enforcement (ICE) agent Dwayne Cook. His arrest was

predicated upon a federal criminal complaint charging him with alien harboring in violation of Title 8, United States Code, Section 1324(a)(1)(A)(iii).

Nearly six hours after his arrest, Mr. Silva was interrogated. At approximately 12:50 p.m., ICE agents Michael Brown and Cheryl Peterson approached Mr. Silva to interview him. *See* Declaration of Steven F. Gruel filed herewith, Exhibit A [consisting of a copy of the government's *Record of Sworn Statement* completed by the ICE agents; Government Discovery Bates Numbers OPPH02458-OPPH02466].[1]

The *Record of Sworn Statement* consists of a printed form which provided a *Miranda* warning both in English and Portuguese. Mr. Silva's "statement" consisted of 7 pages of an agent's handwritten notes.[2] The first 6 pages of notes contain 33 numbered "questions" and "answers." The last page of agent notes [OPPH02465] includes what appears to be an additional, yet unnumbered, question with a single word response. The *Record of Sworn Statement* concluded with a final pre-printed page requesting the interviewee's signature verifying the truth and accuracy of his "statement." Id.

Mr. Silva moves this Court to suppress his statements.[3]

## SUMMARY OF MOTION TO SUPPRESS

The interviewing agents violated Mr. Silva's 5th Amendment Right against self-incrimination with respect to certain questions asked during the custodial interrogation. These statements should be suppressed because:

- ICE agents expressly told Mr. Silvia that he would be asked selective questions pertaining *only* to his " immigration status, current employment and

---

[1] The defense has highlighted some of the portions of its exhibit to assist the Court in locating particular segments.

[2] Mr. Silva's custodial interrogation apparently was not audio or video taped by the agents.

[3] This suppression motion, of course, is moot if the government represents that Mr. Silva's alleged "statements" will not be introduced in the government's case-in-chief. Because nothing has been provided notwithstanding the defense repeated requests for notice of the government's evidence of its case-in-chief, we must assume that the government will seek the admission of these statements at trial.

identity documents." The *Miranda* waiver was explicitly limited to these questions from the agent. Mr. Silva's self-incriminating responses to any questions beyond these selective topics were not knowingly or voluntarily waived;

- Twice Mr. Silva invoked his 5th Amendment Right against self-incrimination to the interviewing agents. The questioning, although very limited thereafter, nevertheless continued;

- Under the totality of the circumstances, Mr. Silva was not aware of the nature of the 5th Amendment right which was being abandoned and the consequences of such abandonment. Mr. Silva was not asked if he needed or desired a Portuguese interpreter. He was not provided with a Portuguese interpreter during the custodial interrogation. Mr. Silva has never had any prior experience with the criminal justice system; and

- Mr. Silva never signed and verified this statement as truthful.

### FIFTH AMENDMENT PRIVILGE AGAINST SELF-INCRIMINATION

The 5th Amendment privilege against self-incrimination is one of the corner stones in our system of criminal law. Since at least 1966, armed with the exclusionary rule, the Courts have served as the watchdog to ensure that no defendant self-incriminates himself without a knowing and voluntary waiver. The right to remain silent and right to an attorney are salient in protecting an accused's full rights. There is a presumption against the waiver of one's 5th Amendment Rights and the government bears the burden of overcoming this presumption by a preponderance of the evidence. United States v. Crews, 502 F.3d 1130 (9th Cir. 2007).[4]

---

[4] See also United States v. Garibay, 143 F.3d 534, 536 (9th Cir.1998). To meet this burden, generally, the Government must prove that, under the totality of the circumstances, the defendant was aware of the nature of the right being abandoned and the consequences of such abandonment. *Id.* Several factors to consider are (i) the defendant's mental capacity; (ii) whether the defendant signed a written waiver; (iii) whether the defendant was advised in his native tongue or had a translator; (iv) whether the defendant appeared to understand his rights; (v)

DEFENDANT GLENIO SILVA'S MOTION TO SUPPRESS STATEMENTS

In order to combat [the pressures inherent in custodial interrogation] and to permit a full opportunity to exercise the privilege against self-incrimination, the accused must be adequately and effectively apprised of his rights. United States v. Williams, 435 F.3d 1148, 1151 (9th Cir. 2006) *citing*, Miranda v. Arizona, 384 U.S. 436, 467 (1966). In Williams, the Ninth Circuit reversed a district court's order denying the suppression of Mr. William's statement because the government's midinterrogation *Miranda* warning did not adequately apprise the defendant of his rights.

A *Miranda* warning functions both to reduce the risk that an involuntary or coerced statement will be admitted at trial and to implement the Fifth Amendment's self-incrimination clause. *Id.* at 457-58, *see also* Chavez v. Martinez, 538 U.S. 760, 790 (2003) (Kennedy, J., concurring in part and dissenting in part). Thus, if a suspect in custody does not receive an adequate warning effectively apprising him of his rights before he incriminates himself, his statements may not be admitted as evidence against him. Miranda, at 479.

### MR. SILVA'S STATEMENTS WERE OBTAINED IN VIOLATION OF THE 5TH AMENDMENT AND MUST BE SURPRESSED

The day he was arrested, ICE agents applied for and received an arrest warrant for Glenio Silva. The supporting affidavit alleged that Mr. Silva managed and operated *Monterey Pizza* and *The Pizza House*. It was further alleged that Mr. Silva hired illegal aliens to work at the two pizzerias. The affidavit also contained allegations that Mr. Silva provided housing for some of the employees. Thus, when he was arrested, ICE agents fully knew that any post-arrest interrogation of Mr. Silva about hiring illegal aliens, harboring illegal aliens, owning and operating the two pizzerias would clearly require full compliance with *Miranda*.

---

whether the defendant's rights were individually and repeatedly explained to him; and (vi) whether the defendant had prior experience with the criminal justice system. *Id.* at 537-39.

A. <u>The *Record of Sworn Statement* Limited the Scope of Mr. Silva's Waiver</u>

Nearly six hours after his arrest, ICE agents explicitly represented to Mr. Silva that they only intended to ask questions concerning three specific subject matters involving his: (1) immigration status; (2) current employment; and (3) identify documents. The agent's custodial interrogation beyond the scope of these specific topics was not waived.

Mr. Silva answered the questions about his immigration status in the United States. He answered questions about his current employment. He told the agents that he had a green card as an identity document. Any questions beyond the expressly limited subject matter of the government's pre-printed *Miranda* waiver far exceeded the agent's representation and, hence, Mr. Silva's knowing waiver of his 5th Amendment right against self-incrimination.

First, of course, the government carries the burden of overcoming the presumption that Mr. Silva did not waive his rights against self-incrimination. The defense submits that the Court should conclude that the government cannot satisfy its burden because: (1) Mr. Silva is not fluent in English; (2) he has limited, if any experience with the criminal justice system; and (3) the interrogating agent recorded instances when Mr. Silva was confused as to what to do and what was going on. If the government's burden is satisfied, however, responses beyond question number 13 should still be suppressed:

i) <u>Responses to Questions 1 to 13 Were Properly Waived</u>

As seen in questions 1 to 5, the interviewing agent asked, and Mr. Silva answered, questions regarding his identity and current immigration status in the United States. Within the expressed confines of the government's *Miranda* waiver, Mr. Silva voluntarily answered questions regarding his current employment. Questions 6 through 13 involved asking: (1) where Mr. Silva's worked; (2) the names and locations of the two pizzerias; (3) if Mr. Silva was the sole owner; and (4) how long he own the two pizzerias. Assuming that the government carries its burden against the presumption of no waiver, the responses to these questions were properly waived under *Miranda*.

ii) <u>Responses to Questions 14 to 33 Were Not Waived</u>

Questions 14 to 33, on the other hand, clearly exceeded the boundaries of the government's representation of what they intended to ask and, just as important, what areas Mr. Silva agreed to knowingly waive his 5th Amendment rights.

For example, in question numbers 14, 15 and 19, the ICE agent directly intended that Mr. Silva incriminate himself by asking "do you hire the employees?" "did you hire the two employees at *Monterey Pizza?*," and "what kinds of ID?" did a new employee show when he was hired by Mr. Silvia.

Likewise, questions focusing on Mr. Silva's hiring and knowledge of the immigration status of a particular employee named *Fabio* (questions 26 – 29) were posed to illicit self-incriminating information without the protections of the 5th Amendment. Question Number 30 directly confronted Mr. Silva by asking if he had employees complete the federal form I-9 which is required to ensure that only those legally permitted to work are employed in the United States.

The interviewing agent further pressed and exceeded the well defined limits of the interrogation by directly asking if Mr. Silva provided employees' housing and whether he knew the rules about hiring only those "allowed to work here."[5]

iii) <u>Selective Waiver</u>

A defendant may selectively waive his *Miranda* rights by agreeing to answer some questions but not others. <u>United States v. Soliz</u>, 129 F.3d 499, 503 (9th Cir. 1997); citing <u>Michigan v. Mosley</u>, 423 U.S. 96, 103-04 (1975); <u>Bruni v. Lewis</u>, 847 F.2d 561, 564 (9th Cir.1988).

<u>Soliz</u> involved an alien smuggling investigation and suspected smuggling activity at a house in San Diego. While in custody, Border Patrol agents asked Mr. Soliz whether he desired to have his sworn statement taken regarding his true citizenship and nationality and his activity at the

---

[5] In addition to exceeding the scope of the waiver, Mr. Silva's response to the last question about knowing the rules about hiring people who are allowed to work in the United States should additionally be suppressed because Mr. Silva directly requested, and the agent recorded, the need for a lawyer. OPPH 02465.

DEFENDANT GLENIO SILVA'S MOTION TO SUPPRESS STATEMENTS

house. The agent *Mirandized* Mr. Soliz. At the conclusion of the *Miranda* warnings, the agent again asked Mr. Soliz if he were willing to make a statement. Mr. Soliz replied, "Yes, regarding my ... citizenship." In reversing the conviction and ordering a new trial, the Ninth Circuit found that Mr. Soliz's statement constituted an unequivocal invocation of a right to remain silent on all issues, except his citizenship.

In telling the agent that he was willing to make a statement about his citizenship, Mr. Soliz selectively waived his *Miranda* rights respecting the inquiry into his citizenship only. After Mr. Soliz invoked his right to remain silent on all subjects, except his citizenship, the agent violated his right by proceeding to question him about other activities. Rather, the agent ignored Mr. Soliz's restrictions on the subject matter of questioning and proceeded to question him about matters other than his citizenship in direct contravention to that limitation. Because Mr. Soliz's statements regarding his activities at the particular suspected smuggling house were obtained in violation of his *Miranda* rights, the district court erred in not suppressing them.

The same reasoning applies in Mr. Silva's case. He was assured in writing, which was in his native language, that he would only be asked about certain limited topics. Mr. Silva expressly agreed to this limitation. Accordingly he placed his initials at the lower right hand corner of the government's document expressly stating the parameters of the agent's inquire and his *Miranda* wavier.

Moreover, the prosecution can not maintain that the questions outside the scope of the clearly defined topics were asked because of an innocent mistake. The criminal complaint was filed and contained detailed criminal allegations far beyond Mr. Silva's immigration status, employment and any identity documents. In fact, the government's discovery purports that its investigation in this case lasted approximately 4 to 5 months.

Additionally, against the backdrop of the long term investigation in this case, it would be disingenuous to argue that "current employment" entailed everything and anything as to *Monterey Pizza* and *The Pizza House*. Indeed, it that was the interrogating agent's true intention, why not simply state so up front?

### B. Mr. Silva Invoked His Right Against Self-Incrimination

The agent's interview notes show that Mr. Silva asked for an attorney on two occasions during the interview. First, when it became clear that the ICE agent was delving into areas beyond Mr. Silva's immigration status, his current employment and his identity documents, he expressed a request for an attorney.

Specifically, when asked in question number 33, "Did you arrange for there (sic) [employees] housing?" Mr. Silva allegedly responded:

**"I think some of these I might want a lawer (sic). I'm asking you. What do you think is best."**

The agent correctly informed Mr. Silva that the choice for any attorney was his and that he could not "recommend that you have a lawyer or not." OPPH02464. The agent re-read the Miranda statement on the *Record of Sworn Statement* and explained it "line-by-line (again)" whereupon the agent was convinced that Mr. Silva invoked his right to have an attorney present and wrote "subject requested lawer (sic)." OPPH02465.

Yet, the agent nevertheless asked the following question:

**Q: You know there are rules about hiring people who are allowed to work here. Do you think that could be a problem?**

**A. Yeah.**

**Q. O.k. I'm going to finish the interview b/c you requested a lawer (sic).**

Mr. Silva's response ("yeah"), although on its face confusing, should be suppressed because it comes on the heels of a clearly acknowledged unequivocal invocation of the right to counsel. In Davis v. United States, 512 U.S. 452, 459 (1994), the Supreme Court held that in order for *Miranda* 's right to counsel to apply, it must be unambiguously invoked. The authorities must

DEFENDANT GLENIO SILVA'S MOTION TO SUPPRESS STATEMENTS

"scrupulously honor" the suspect's right to cut off questioning. United States v. Lopez-Diaz, 630 F.2d 661, 664 (9th Cir. 1980).

### C. No Portuguese Interpreter Or Knowledge of the Criminal Justice Process

The agent's notes indicate that Mr. Silva did not fully understand his right to remain silent and have an attorney present. When the interrogation expanded beyond the subject matter represented to Mr. Silva, he became confused about the need for an attorney and said "he didn't know how it [requesting counsel] works" and that he "never had a lawyer." OPPH 02464. This custodial setting was further complicated in that Mr. Silva is not fluent in English and has limited understanding of the criminal justice system.

Although the investigators took the precaution to ensure that the Miranda statement was both in English and Portuguese, Mr. Silva was not afforded an interpreter to answer the agent's questions. Consequently, the content of the responses are inherently suspect. Given the confusion about this process, Mr. Silva understandably refused to sign the document as his statements. This interrogative backdrop provides no confidence that the government can carry its burden in overcoming the strong presumption that Mr. Silva did not knowingly waived his 5th Amendment rights.

## CONCLUSION

Mr. Silva's statements are not admissible. Mr. Silva did not give a knowing, intelligent and voluntary Miranda waiver to those incriminating questions posed by the agent.

Respectfully Submitted,

Dated: June 29, 2008

_____
STEVEN F. GRUEL
Attorney for Glenio Silva

DEFENDANT GLENIO SILVA'S MOTION TO SUPPRESS STATEMENTS

- 9 -