STEVEN F. GRUEL (CSBN 213148)
655 Montgomery Street, Suite 1700
San Francisco, California 94122
Telephone Number (415) 989-1253
Fax Number (415) 576-1442
attystevengruel@sbcglobal.net

Attorney for Glenio Silva

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>    Vs.<br><br>GLENIO JESUA FERREIRA SILVA,<br><br>        Defendant. | No. CR-07-00678-JSW<br><br>DEFENDANT GLENIO SILVA'S MOTION TO DISMISS THE INDICTMENT FOR SELECTIVE PROSECUTION AND PURSUANT TO THE COURT'S SUPERVISORY POWERS<br><br>Honorable Jeffrey S. White<br><br>Date: August 21, 2008 @ 2:30 pm |

    THIS IS NOTICE that on August 21, 2008, at 2:30 p.m., defendant Glenio Silva will move this Court for an Order dismissing the Indictment. This motion is based on the Indictment, the defendant's previous motions, defense declarations, the record in this case and the arguments contained herein as well as to be presented at the hearing on this matter.

## INTRODUCTION

    This costly federal prosecution involves the alleged harboring of six illegal aliens who worked at two small pizzerias in the Northern District of California. Defendant Glenio Silva

DEFENDANT GLENIO SILVA'S MOTION TO DISMISS THE INDICTMENT FOR SELECTIVE PROSECUTION AND PURSUANT TO THE COURT'S SUPERVISORY POWERS

- 1

operates and manages these "mom and pop" pizzerias.[1] This case does not involve involuntary servitude, harsh working conditions or any inhumane treatment.[2] There are no accusations that *Monterey Pizza* or *The Pizza House* served as hotbeds of criminal activity or unsavory conduct. Apart from unfounded allegations from a government informant, whose identity the prosecution refuses to disclose, Mr. Silva has not engaged in any criminal activity whatsoever.[3]

At the last hearing, the Court denied defendant Glenio Silva's motion ordering additional discovery from the government predicated on the claim of selective prosecution. Without the benefit of a transcript, defense counsel recalls that the Court pointed to the high threshold needed, not only to order discovery for a selective prosecution motion, but also necessary to support dismissing an indictment. Mindful of that hurdle, as well as the deeply carved separation of powers which serves our system of government, the defense nevertheless files this motion also seeking the Court's supervisory powers to dismiss the indictment.

Admittedly, the defense seeks extraordinary relief. Equally true, however, is the conclusion that the totality of circumstances comprising this investigation and prosecution are likewise extraordinary.

In addition to an unconstitutionally arbitrary prosecution, the Court should utilize its supervisory powers as further justification to dismiss the indictment. The Court's supervisory

---

[1]  Glenio Silva is a lawful permanent resident of the United States, married to a United States citizen and has two children with his wife. He has no criminal history. Mr. Silva has been in the United States since approximately 1991 when he came to the United States to work on a diary farm in Wisconsin.

[2] To the contrary, as government material witness Gilson De Araugjo testified, he asked Mr. Silva if he could stay at *Monterey Pizza* because he had no other place to go, not because he needed safe haven from immigration. TR:10/12/07; pp 13-14.[2]

[3]  As the Court will recall, ICE agent Purfeerst reported that the protected informant labeled SA-1180-SF, claimed that "Glen Silva employs illegal aliens, helps them secure counterfeit documents and aids in their obtaining California Driver's Licenses." SA-1180-SF told agent Purfeerst that Mr. Silva helped obtain fake social security cards and Puerto Rican Birth certificates in order to obtain California Driver's Licenses. This unidentified informant's story also included that Mr. Silva charged individuals $4,000.00 to obtain phony California Driver's license. As we know, none of these allegations proved true.

DEFENDANT GLENIO SILVA'S MOTION TO DISMISS THE INDICTMENT FOR SELECTIVE
PROSECUTION AND PURSUANT TO THE COURT'S SUPERVISORY POWERS

powers are necessary to intervene because three government material witnesses have already testified that Mr. Silva did not commit criminal acts. Plus, after a full evidentiary hearing, the California Department of Labor has found that the prosecution's cooperator, Silvano Santos, *was the "employer"* at *Monterey Pizza*, not Mr. Silva.

## SELECTIVE AND ARBITRARY PROSECUTION

Prosecutorial discretion is broad, but not without constitutional limitation. <u>Wayte v. United States</u>, 470 U.S. 598, 607 (1985). Subject to the constraints of the Equal protection Clause, the decision to prosecute may not be based on an unjustifiable standard such as race, gender, religion or *other arbitrary classifications*. <u>Id</u>. at 608 (emphasis added); <u>J.E.B. v. Alabama ex. re. T.B.</u>, 511 U.S. 127, 136 (1994)(holding that invidious discrimination on account of gender, no less than race or ethnicity, violates the Equal protection Clause).

In the recent case of <u>United States v. Trimble</u>, 487 F.3d 752 (9th Cir. 2007 ), the Ninth Circuit, although not on point, provided helpful insight in viewing criminal cases where arbitrary government action appears. In <u>Trimble,</u> the defendant was convicted of several petty offense traffic violations on federal property. Unlike other similarly situated defendants, Ms. Trimble had to pay a $25.00 processing fee for her traffic convictions because a different style citation form was used in her case as opposed to others who received tickets that day. Although a mere $25.00, the Court reversed the imposition of the fee. Analyzed under the basic principles of due process and notice, the Court found the government action arbitrary.

Similar arbitrary government action, where other suspected illegal alien employers or those who harbor illegal aliens are not criminally prosecuted, is evident in this case.

### Two Other Worksite Enforcement Cases In the Bay Area

On October 5, 2005 when ICE agents arrested Mexican nationals who were working illegally at the Pacific American Service (PACAM) warehouse and distribution center which brings goods into the United States through the Port of Oakland. ICE agents apprehended illegal Mexican

DEFENDANT GLENIO SILVA'S MOTION TO DISMISS THE INDICTMENT FOR SELECTIVE PROSECUTION AND PURSUANT TO THE COURT'S SUPERVISORY POWERS

- 3

workers as they reported for work at PACAM's Hayward warehouse. The illegal workers were identified after agents audited the hiring records of more than 60 PACAM workers and found that approximately 25 percent of the employees were not authorized to work in the United States. No employer or manager at PACAM was arrested or prosecuted.

On May 2, 2008, 63 illegal aliens employed by a California restaurant chain were arrested by San Francisco ICE agents. *See* Steven F. Gruel Declaration, Exhibit A [ICE press release]. The 63 individuals were arrested on *administrative* immigration violations. No one, including the employer(s) was arrested on criminal charges. This arbitrary government action (criminal response versus administrative response) appears at the national level as well.

**Two Recent National Worksite Enforcement Cases**

Since the last appearance, ICE has executed at least two major worksite enforcement raids in Houston, Texas and Arlington, Washington. On June 25, 2008 ICE worksite agents arrested more than 160 employees at a Houston rag-exporting company. The next day, Seattle agents arrested 32 illegal workers at a Puget-Sound aerospace manufacturer plant. According to the ICE press releases, these raids were administrative, not criminal, responses to violations of the worksite laws. *See* Gruel Declaration, Exhibit B [ICE press releases].

**Sanctuary Cities – Alien Harboring With Impunity**

The arbitrary criminal prosecution against Mr. Silvia, in lieu of an administrative action, is even more pronounced when viewed against the backdrop that his pizzerias are in the federal district which includes two cities serving as highly publicized sanctuaries for illegal aliens.[4]

---

[4] Mr. Silva requests that the Court take judicial notice that both the cities of San Francisco and Oakland have declared themselves as sanctuaries for illegal aliens. As in the documents previously filed with the Court, According to a February 2, 2008 press release, the Mayor of San Francisco underscored and reaffirmed the City's policy protecting undocumented aliens by assuring them of access to local government services without fear of reporting them to ICE. In 1989, San Francisco passed the "City of Refuge" Ordinance (Sanctuary Ordinance) which prohibits City employees from assisting ICE with detection, investigations and arrests unless required by federal or state law or a warrant. In February 2007, the San Francisco Mayor called on City departments to develop protocol and training on the Sanctuary Ordinance.

DEFENDANT GLENIO SILVA'S MOTION TO DISMISS THE INDICTMENT FOR SELECTIVE
PROSECUTION AND PURSUANT TO THE COURT'S SUPERVISORY POWERS

- 4

Both San Francisco (1989) and Oakland (May 2007) have declared that they are sanctuary cities, which according to federal law, would expose them to violations of alien harboring.

Amazingly, if Mr. Silva worked for San Francisco, or if his pizzeria was San Francisco operated, he would be adhering to City law, with impunity, by not assisting ICE with illegal alien detection. In other words, local policies and ordinances allow city employees to assist illegal aliens avoid detection by federal authorities. This is a clear violation of the law regardless of how well intentioned.

If nothing else, ICE's enforcement of worksite violations is bewildering. Major violators receive a slap on the wrist or no action whatsoever, undocumented aliens are openly harbored as they seek refuge in sanctuary cities, and yet a lone pizzeria owner with six undocumented workers is caught up in the whirlpool of this federal criminal prosecution. Picking such "low hanging fruit" might be palatable if the consequences of prison and deportation were not so life altering for Mr. Silva.

**More Arbitrary Enforcement Learned From The Government's Witnesses**

Three government material witnesses have been deposed for trial. Each has testified that they illegally worked at other pizzerias and at other jobs. Gilson De Araujo ("Gilson") testified that he illegally worked at Round Table, Pizza Hut and North Beach Pizza. (TR: 10/12/07; pp 22; 37). Geraldo Rodrigues ('Geraldo") said that he worked at Geneva Pizza and did construction work. ICE has not prosecuted these other employers.

**THE COURT'S SUPERVISORY POWERS**

The three legitimate bases for the exercise of the supervisory power are: (1) to remedy a violation of a statutory or constitutional right; (2) to preserve judicial integrity; and (3) to deter future illegal conduct. United States v. Simpson, 927 F.2d 1088, 1090 (9th Cir. 1991) The court's

DEFENDANT GLENIO SILVA'S MOTION TO DISMISS THE INDICTMENT FOR SELECTIVE
PROSECUTION AND PURSUANT TO THE COURT'S SUPERVISORY POWERS

supervisory power may be used to vindicate a defendant's rights, as well as to preserve judicial integrity and/or to deter illegal or improper conduct. <u>United States v. Hasting</u>, 461 U.S. 499 (1983).    Given the facts in this case, all of the reasons justify the use of the Court's supervisory powers.

**Government Material Witnesses Exculpate Mr. Silvia of Alien Harboring**

The testimony from the government's material witnesses has not gone well for the prosecution.  Testimony from Gilson, Wander and Geraldo, three suspected employees of the pizzerias, clearly established that Mr. Silva knew nothing about their illegal immigration status or that he purposely tried to shield them from ICE agents.[5] Not surprisingly, the Court ordered fourth government material witness deposition of Andrea DeSouza was quickly cancelled by the government.    This was likely because its previous witnesses had testified overwhelmingly favorably for Mr. Silva.

1. **Gilson De Araujo:** (TR:10/12/07; pp 1-61):

Gilson testified that Mr. Silva did not know that he was in the United States illegally and that they never discussed his immigration status. (TR: 10/12/07: pp. 46). Although the government fully knows that Gilson entered into a fraudulent marriage to stay in the United States, possessed counterfeit documents in the name of Gilvan Thomazele, overstayed his tourist visa several times and has completed his trial deposition, ICE released Gilson from custody. ICE has not prosecuted Gilson for the felony offense of marriage fraud.  He remains in the United States.

---

[5]   The complete transcripts from the October 12, 2007 depositions of Gilson De Araujo and Wander De Araujo ("Wander"), plus the April 16, 2008 deposition of Geraldo Rodrigues are attached for the record. See Gruel Declaration, Exhibit C (Gilson De Araujo), D (Wander De Araujo) and E (Geraldo Rodrigues).

DEFENDANT GLENIO SILVA'S MOTION TO DISMISS THE INDICTMENT FOR SELECTIVE
PROSECUTION AND PURSUANT TO THE COURT'S SUPERVISORY POWERS

- 6 -

2. **Wander De Araujo:** (TR:10/12/07; pp 1-35):

Wander said he did not talk to Mr. Silva about how he came to the United States and never talked to Mr. Silva about being in the country illegally. (TR:10/12/07; pp 19). Wander also testified that he didn't ask Mr. Silva if he could live at the *Pizza House* and just started living there. (TR:10/12/07; pp 23).

3. **Geraldo Rodrigues:** (TR:04/16/07; pp 1-75):

Geraldo testified that he never told Mr. Silva that he was in the United States illegally. (TR:04/16/07; p 45). Instead, he told Mr. Silva that he had a visa which was good for 10 years. Geraldo testified that he never asked Mr. Silva if he could live a *Monterey Pizza* to avoid immigration officials. (TR:04/16/07; p 68.)

Significantly, Geraldo told how the government cooperator Silvano Santos was the person actually in charge of *Monterey Pizza*. In fact, Geraldo explained that Santos and his wife instructed him to take $23,000 in cash and break it down into two deposits for the same account at two different branches of the Bank of America. (TR:04/16/07; p 63-65.)[6]

**The California Labor Department Determines Silvano Santos is the Employer**

While this prosecution has been proceeding, Silvano Santos, the government cooperator and informant, filed a claim with the California Department of Labor alleging that Mr. Silva owed him nearly $85,000 for wages and benefits. On March 28, 2008, Labor Hearing Officer Regina C. Pagalilauan conducted an evidentiary hearing on these wild claims. Significantly, on April

---

[6] Information that the government's cooperator was illegally "structuring" a large cash for an unknown purpose was provided by the defense long ago. To date, nothing has been provided to the defense which shows that ICE agents did anything with this serious allegation.

DEFENDANT GLENIO SILVA'S MOTION TO DISMISS THE INDICTMENT FOR SELECTIVE PROSECUTION AND PURSUANT TO THE COURT'S SUPERVISORY POWERS

- 7

24, 2008, Hearing Officer held against informant Santos and found that *he was in charge* of the operations at *Monterey Pizza*, not Mr. Silva.  *See* Gruel Declaration; Exhibit F [4/24/08 Order]. Notwithstanding this finding, albeit from a state agency, which places its informant directly responsible for hiring illegal aliens in this case, Silvano Santos has not been criminally charged by the government.

Admittedly, the defense can not direct the Court to any "on point" precedent which easily paves the way for the Court's supervisory powers in this case.  But then again, it is the rare cases with the unusual circumstances which warrant the Court's intervention.  The defense respectfully requests that this is such a case.

### CONCLUSION

In opposing Mr. Silva's discovery request in support of his selective prosecution motion, the government speculated that the defense motion stemmed from frustration and anger about the prosecution. Actually, the government was partially correct.  As outlined above,  Mr. Silva has reason to be frustrated, upset and confused.  He is being criminally prosecuted for alleged administrative worksite violations while similarly situated serious violators go free and while the government's own witnesses have exonerated him.

Without question, the nation's immigration issues and problems cover a wide range of issues and beliefs.  Spending limited government resources attempting to convict and the deport Glenio Silva with *this* prosecution is not going to change anything.

Respectfully Submitted,

Dated: June 30, 2008

STEVEN F. GRUEL
Attorney for Glenio Silva

DEFENDANT GLENIO SILVA'S MOTION TO DISMISS THE INDICTMENT FOR SELECTIVE
PROSECUTION AND PURSUANT TO THE COURT'S SUPERVISORY POWERS