STEVEN F. GRUEL (CSBN 213148)
655 Montgomery Street, Suite 1700
San Francisco, California 94122
Telephone Number (415) 989-1253
Fax Number (415) 576-1442
attystevengruel@sbcglobal.net

Attorney for Glenio Silva

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| UNITED STATES OF AMERICA, | ) No. CR-07-00678-JSW |
|---|---|
| Plaintiff, | ) |
| | ) DECLARATION OF STEVEN F. GRUEL IN |
| Vs. | ) SUPPORT OF DEFENDANT GLENIO |
| | ) SILVA'S MOTION TO DISMISS THE |
| | ) INDICTMENT FOR SELECTIVE |
| GLENIO JESUA FERREIRA SILVA, | ) PROSECUTION AND PURSUANT TO THE |
| | ) COURT'S SUPERVISORY POWERS |
| Defendant. | ) |
| | ) Honorable Jeffrey S. White |
| | ) |
| | ) Hearing: August 21, 2008 @ 2:30 p.m. |

I, STEVEN F. GRUEL, declare as follows:

1. I make this declaration in support of defendant Glenio Silva's Motion To Dismiss the Indictment in the above captioned case.

2. Attached hereto as Exhibit A is a true and correct copy of the United States Immigration and Custom Enforcement's press release dated May 2, 2008 which I downloaded from the agency's website.

DECLARATION OF STEVEN F. GRUEL IN SUPPORT OF DEFENDANT
GLENIO SILVA'S MOTION TO DISMISS THE INDICTMENT
- 1

3. Attached hereto as Exhibit B is a true and correct copy of the United States Immigration and Custom Enforcement's press release dated June 25, 2008 and June 26, 2008 which I downloaded from the agency's website.

4. Attached hereto as Exhibit C is a true and correct copy of the transcript [pages 1 – 61] of the material witness deposition transcript of Gilson Ferreira De Araujo dated October 12, 2007. This transcript copy is being manually filed with the Court.

5. Attached hereto as Exhibit D is a true and correct copy of the transcript [pages 1 - 35] of the material witness deposition transcript of Wander Carlos De Araujo dated October 12, 2007. This transcript copy is being manually filed with the Court.

6. Attached hereto as Exhibit E is a true and correct copy of the transcript [pages 1 – 75] of the material witness deposition transcript of Geraldo Rodrigues dated April 16, 2008. This transcript copy is being manually filed with the Court.

7. Attached hereto as Exhibit F is a true and correct copy of the April 24, 2008 Order, Decision and Award by Hearing Officer Regina C. Pagalilauan of the State of California, Department of Industrial Relations, Division of Labor Standards Enforcement.

I declare under penalty of perjury that the foregoing is true and correct to the best of my personal knowledge.

Executed this 30th day of June 2008, at San Francisco, California.

STEVEN F. GRUEL
Attorney for Glenio Silva

DECLARATION OF STEVEN F. GRUEL IN SUPPORT OF DEFENDANT
GLENIO SILVA'S MOTION TO DISMISS THE INDICTMENT
- 2

# EXHIBIT A



U.S. Immigration
and Customs
Enforcement

# News Releases

May 2, 2008

## ICE arrests 63 illegal aliens employed by California restaurant chain

SAN FRANCISCO - U.S. Immigration and Customs Enforcement (ICE) agents arrested 63 illegal alien workers on administrative immigration violations today during an enforcement action at several outlets of a Bay Area Mexican restaurant chain. The arrests, which occurred at 11 El Balazo restaurants, are part an ongoing ICE investigation.

The illegal alien workers identified during today's operation included foreign nationals from two countries - Mexico (62), and Guatemala (1). All of the individuals will be photographed, fingerprinted and processed by ICE. They are also being interviewed by ICE agents to elicit information about possible health, caregiver or other humanitarian issues, and to identify any urgent medical needs. The information aids ICE in making decisions about whether to detain an individual or permit a conditional humanitarian release.

As a result of those interviews, 10 women and one man, were released initially on humanitarian grounds, pending future immigration proceedings. The majority of the remaining illegal workers are expected to be released later today under supervision while they await an immigration hearing.

A few of the illegal aliens encountered during the enforcement action, including those who have prior criminal convictions or deportations, will be detained. They will be transferred to ICE contract detention facilities in northern California.

ICE has set up a local phone number family members of those arrested can call to get information about their relatives' detention status and the removal process. The phone number is: (415) 844-5381. During the operation, ICE agents handed out cards with that phone number to workers and workers' family members encountered at the enforcement locations. In addition, ICE contacted representatives of several prominent Hispanic community groups in the Bay Area to ensure they were aware of the enforcement action and had information about the local contact number.

Since its establishment in 2003, ICE has dramatically enhanced its efforts to combat the unlawful employment of illegal aliens in this country. ICE's comprehensive strategy for worksite enforcement is aimed at promoting national security and public safety, protecting critical

infrastructure, and ensuring fair labor standards.

In fiscal year 2007, ICE made more than 4,900 arrests in connection with worksite enforcement investigations, including 863 involving criminal violations. That represents a 45-fold increase in criminal worksite arrests compared to fiscal year 2001. In addition, ICE obtained more than $31 million in criminal fines, restitutions and civil judgments in fiscal year 2007 as a result of worksite- related enforcement actions.

-- ICE --

U.S. Immigration and Customs Enforcement (ICE) was established in March 2003 as the largest investigative arm of the Department of Homeland Security. ICE is comprised of five integrated divisions that form a 21st century law enforcement agency with broad responsibilities for a number of key homeland security priorities.

Last Modified: Monday, May 5, 2008

# EXHIBIT B



U.S. Immigration and Customs Enforcement

# News Releases

June 25, 2008

## ICE arrests more than 160 employees at a Houston rag-exporting company

HOUSTON - As part of its ongoing enforcement efforts to investigate worksites allegedly hiring illegal aliens, U. S. Immigration and Customs Enforcement (ICE) executed a federal search warrant today at a Houston used clothing and rag-exporting company.

ICE arrested more than 160 Action Rags USA employees for administrative immigration violations. Action Rags USA is an international supplier of used clothing and rags. Today's enforcement action is part of a more than a year-long ongoing investigation

"ICE worksite enforcement investigations unfold in multiple stages. Our ICE agents will follow the evidence and information gathered from this operation to determine if there are other violations of the law," said Robert Rutt, special agent in charge for ICE's Office of Investigations in Houston.

The individuals arrested today are from Mexico, El Salvador, Guatemala and Honduras.

Everyone detained has been interviewed by ICE agents and the Division of Immigration Health Services to determine if they have medical, caregiver, or other humanitarian issues. So far, ICE has identified approximately 60 individuals who may qualify for a humanitarian release. However, these individuals are still required to appear before a federal immigration judge who will ultimately determine whether they have a legal right to remain in the United States.

"ICE remains committed to the safe and humane treatment of detainees within our custody," said Kennneth Landgrebe, field office director for ICE's Office of Detention and Removal Operations in Houston. "The United States welcomes law abiding immigrants; however, those without a valid status may face the consequences of being arrested and ultimately deported."

A 24-hour toll-free hotline has been established for family members to find out more information about the detention status of those arrested today. The toll-free phone number is: 1-866-341-3858. Additionally, ICE has contacted local community groups and foreign consular offices to provide accurate information about the operation.

ICE has significantly enhanced its efforts to combat the unlawful employment of illegal aliens and to target employers who knowingly hire and harbor illegal aliens. As of May 2008, ICE has made more than 2,900 administrative arrests in connection with worksite enforcement investigations, including more than 850 criminal arrests. In fiscal year 2007, ICE secured more than $30 million in criminal fines, restitutions, seizures and civil judgments as a result of worksite related enforcement actions. More than 4,000 administrative arrests were made, along with 863 arrests for criminal violations.

-- ICE --

> U.S. Immigration and Customs Enforcement (ICE) was established in March 2003 as the largest investigative arm of the Department of Homeland Security. ICE is comprised of five integrated divisions that form a 21st century law enforcement agency with broad responsibilities for a number of key homeland security priorities.

Last Modified: Wednesday, June 25, 2008



U.S. Immigration
and Customs
Enforcement

# News Releases

June 26, 2008

## ICE arrests 32 in operation targeting illegal workers at Puget Sound-area aerospace manufacturer

ARLINGTON, Wash. - U.S. Immigration and Customs Enforcement (ICE) agents executed a federal civil search warrant this morning at an aircraft manufacturing plant here, arresting 32 of the company's workers on administrative immigration violations.

The search warrant was executed at Aerospace Manufacturing Technologies, Inc. (AMT), a leading supplier of frame and interior parts for commercial and military aircraft. AMT provides many of the parts used in some of aviation's most popular airplanes, including the Boeing 737 and Boeing 777.

Today's operation is part of ICE's worksite enforcement effort focusing on critical infrastructure and security sensitive sites. AMT is registered with the U.S. Department of State's Director of Defense Trade Controls, which oversees the export and import of certain products that can be used for national defense purposes.

The unauthorized workers included foreign nationals from two countries - Mexico (30) and El Salvador (2). The group includes 16 men and 16 women.

All of those arrested today are being interviewed, fingerprinted and photographed by ICE agents and processed for removal from the United States. Information obtained during the interviews assists ICE in making decisions about whether to detain an individual or permit a conditional humanitarian release. As a result of those interviews, four of the illegal workers, all female, were released initially on humanitarian grounds, pending future immigration proceedings. The 28 workers remaining in ICE custody will be held at the Northwest Detention Center in Tacoma, Wash.

Today's enforcement action comes after ICE agents audited the employment records of AMT. The audit revealed discrepancies leading agents to believe that a small percentage of the company's employees used counterfeit documents to secure their jobs. At this time, there is no evidence AMT was aware the arrested workers had used false credentials to secure their employment. The investigation is ongoing.

"Today's enforcement action is part of ICE's ongoing nationwide effort to shut down the employment magnet fueling illegal immigration," said Leigh Winchell, special agent in charge of ICE's office of investigations in Seattle. "Every job held by an illegal alien is a job taken from a U.S citizen or legal resident of this area."

ICE has set up a local phone number family members of the arrested workers can call with questions about their relative's detention status and the removal process. The phone number is: 206-553-5657.

Since ICE was created in March 2003, the agency has dramatically enhanced its efforts to combat illegal aliens unlawfully working in the United States. So far in fiscal year 2008, ICE has made more than 3,700 administrative immigration arrests in connection with worksite enforcement investigations, including 850 involving criminal violations. In fiscal year 2007, ICE made more than 4,900 arrests in connection with worksite enforcement investigations, including 863 involving criminal violations.

To help employers ensure that they are building a legal workforce through voluntary partnerships with the government, the U.S. Department of Homeland Security announced a new initiative called the ICE Mutual Agreement between Government and Employers or IMAGE. IMAGE is designed to build cooperative relationships between government and businesses, to strengthen hiring practices, and to reduce unlawfully employing illegal aliens. The initiative also seeks to accomplish greater industry compliance and corporate due diligence through enhanced federal training and education of employers. ICE strongly encourages employers to review IMAGE program materials available at www.ICE.gov.

-- ICE --

U.S. Immigration and Customs Enforcement (ICE) was established in March 2003 as the largest investigative arm of the Department of Homeland Security. ICE is comprised of five integrated divisions that form a 21st century law enforcement agency with broad responsibilities for a number of key homeland security priorities.

Last Modified: Thursday, June 26, 2008

# EXHIBIT C

# EXHIBIT D

# EXHIBIT E

# EXHIBIT F

BEFORE THE LABOR COMMISSIONER
OF THE STATE OF CALIFORNIA

SILVANO DE OLIVEIRA SANTOS,

        Plaintiff,

vs.

GRAND TRIO, INC., a California corporation dba Monterey Pizza,

        Defendant

CASE NO. 11-33493 IR

FINDINGS OF FACT AND CONCLUSIONS OF LAW OF THE LABOR COMMISSIONER

## BACKGROUND

Plaintiff filed an initial claim with the Labor Commissioner's office on January 4, 2007. The complaint alleges Plaintiff is owed the following:

1. Overtime wages for the period of January 4, 2004 to December 13, 2006, being 6,095 hours payable at the one half of regular rate of $5.00;

2. Double time wages for the period January 4, 2004 to December 13, 2006, being 2,672 hours payable at the hourly rate of $10.00;

3. Additional wages pursuant to the Industrial Welfare Order 5-2001 and Labor Code § 226.7; from January 4, 2004 to December 13, 2006, being 1,070 missed rest periods at hourly rate of $10.00 and 1,070 missed meal periods at the hourly rate of $10.00; and

4. Waiting time penalties pursuant to Labor Code §§ 202 and 203 at the daily rate of $180.00.

A hearing was conducted in San Francisco, California, on March 28, 2008, before the undersigned hearing officer designated by the Labor Commissioner to hear this matter. Plaintiff appeared in pro per. Jason Szydlik, Attorney At Law, represented Plaintiff. Glenio Silva appeared for Defendant. Steven F. Gruel, Attorney At Law, represented

Defendant.

Due consideration having been given to the testimony, documentary evidence, and arguments presented, the Labor Commissioner hereby adopts the following Order, Decision or Award.

## FINDINGS OF FACT

1. Defendant Glenio Silva, an individual, hired Plaintiff, but did not direct or supervise Plaintiff's work. Based on the evidence, Defendant Silva was not Plaintiff's employer[1]; therefore, Plaintiff's claim against Defendant Silva, an individual is dismissed. Defendant Salah Webb, an individual, was not involved in Defendant's daily operations; therefore, Plaintiff's claim against Defendant Webb, an individual is dismissed. Any future reference to "Defendant" shall be to Defendant Grand Trio, Inc., a California corporation doing business as Monterey Pizza.

2. Defendant employed Plaintiff as a manager under the terms of an oral employment agreement in San Francisco from October 5, 1999 to December 13, 2006. At the time of Plaintiff's discharge, Defendant paid Plaintiff the daily rate of $140.00.

3. Plaintiff testified he worked fourteen hours in a day, seven days a week all throughout his employment. Plaintiff reported to work at 11:00 am and left around 1:00 am. Plaintiff claimed that he did not take any vacation or sick days. Plaintiff also worked during holidays, with the exception of Thanksgiving and Christmas holiday.

4. As the manager, Plaintiff controlled and directed Defendant's daily operation from staffing, scheduling, and paying of wages and vendors. Plaintiff was authorized to take money from Defendant's register to pay employees' wages in cash on a daily basis. Plaintiff also used his personal bank account to pay for Defendant's utilities. Plaintiff managed Defendant's business, which included the hiring and firing of its employees,

---

[1] IWC Order 5-2001 defines "employer" as any person as defined in Section 18 of the Labor Code, who directly or indirectly, or through an agent or any other person, employs or exercises control over the wages, hours, or working conditions of any person (emphasis added). Section 18 of the Labor Code defines "person" as any person, association, organization, partnership, business trust, limited liability company, or corporation.

scheduling employees' hours, paying of employee's wages and bills or invoices from vendors, and reconciling of its business records. Plaintiff used his discretion and judgment in the business.

5. Plaintiff testified Defendant did not afford him an off-duty meal period of at least 30 minutes or two rest periods of at least ten minutes. Plaintiff, who knew about the rest and meal period policy, testified he ate when there was a lull in activity, but he was not off duty. Plaintiff testified that, due to low sales and business not doing well, he could not hire additional employees to provide coverage for rest and meal breaks.

6. Defendant appeared at the hearing but declined to testify due to a pending criminal action filed against Plaintiff.

7. Defendant provided Plaintiff his final wages on December 13, 2006, Plaintiff's termination date.

## LEGAL ANALYSIS

1. Section 1 of the Industrial Welfare Commission Order no. 5-2001, "Applicability of Order" provides that the overtime pay requirements of the Orders shall not apply to persons employed in administrative, executive or professional capacities who earned a monthly salary which is equivalent to no less than twice the state minimum wage for full-time employment, and who meet certain other specified criteria. Plaintiff's duties involved management of the enterprise or a customarily recognized department or subdivision thereof, that he had the authority to hire and fire employees, that he customarily and regularly directed two or more people, that he customarily and regularly exercised discretion and independent judgment on matters of significance, and that he spent the majority of the workweek performing managerial duties. The Order defines "primarily," as used in Section 1 (Applicability), as meaning "more than one-half the employee's work time." The testimony and documents presented at hearing were sufficient to establish that Plaintiff, as a manager, was exempt from the overtime provisions of the Order. Therefore; Plaintiff's claim for overtime and double time wages is dismissed.

2. § 1(B) of the order, provides the provisions of § 11, Meal Periods and § 12 Rest Periods, does not apply to person employed in administrative, executive, or professional capacities. Labor Code § 226.7 provides that if an employer fails to provide an employee a meal period or rest period in accordance with the Order, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided. The totality of the evidence established that the rest and meal provisions of the Order do not apply to Plaintiff, an exempt employee. Therfore, Plaintiff's claim for penalties pursuant to Labor Code § 226.7 is dismissed.

3. Labor Code § 201 requires that if an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately. Labor Code § 203 provides that if an employer willfully fails to pay any earned wages of an employee in accordance with § 201, the wages of such employee shall continue as a penalty from the due date thereof at the same rate until paid, up to 30 days. Defendant discharged Plaintiff on December 13, 2006 and provided Plaintiff with his final wages on the same day. No further wages were found due to Plaintiff, therefore, Plaintiff's claim for waiting time penalties pursuant to Labor Code § 203 is dismissed.

## CONCLUSION

For all of the reasons set forth above, IT IS HEREBY ORDERED that Plaintiff take nothing by virtue of his complaint.

Dated: __April 24, 2008__

_Regina C. Pagalilauan, Hearing Officer_

STATE OF CALIFORNIA
DEPARTMENT OF INDUSTRIAL RELATIONS
DIVISION OF LABOR STANDARDS ENFORCEMENT

## CERTIFICATION OF SERVICE BY MAIL
### (C.C.P. 1013A) OR CERTIFIED MAIL

I, ……Sigrid Hjelle……, do hereby certify that I am a resident of or employed in the County of ……San Francisco……, over 18 years of age, not a party to the within action, and that I am employed at and my business address is:

**LABOR COMMISSIONER, STATE OF CALIFORNIA**
**455 Golden Gate Ave. - 10th floor East**
**San Francisco, CA 94102**
**Tel: (415)703-5300   Fax: (415)703-4130**

I am readily familiar with the business practice of my place of business for collection and processing of correspondence for mailing with the United States Postal Service. Correspondence so collected and processed is deposited with the United States Postal Service that same day in the ordinary course of business.

On ……April 29, 2008…… at my place of business, a copy of the following document(s):

……**Order, Decision or Award**……

was(were) placed for deposit in the United States Postal Service in a sealed envelope, by first class mail……, with postage fully prepaid, addressed to:

NOTICE TO: Steven F. Gruel, Esq.
Law Offices of Steven F. Gruel
655 Montgomery Street, Suite 1700
San Francisco, CA 94111

and that envelope was placed for collection and mailing on that date following ordinary business practices.

*I certify under penalty of perjury that the foregoing is true and correct.*

Executed on: ……April 29, 2008…… at ……San Francisco……, California

STATE CASE NUMBER: 11-33493      IR

Sigrid Hjelle

DLSE 544/DEF. ATTY. (3/06)      CERTIFICATION OF MAILING      L.C. 98

| | |
|---|---|
| **LABOR COMMISSIONER, STATE OF CALIFORNIA**<br>Department of Industrial Relations<br>Division of Labor Standards Enforcement<br>455 Golden Gate Ave. - 10th floor East<br>San Francisco, CA  94102<br>Tel: (415)703-5300   Fax: (415)703-4130 | For Court Use Only: |
| Plaintiff:    Silvano de Oliveira Santos | |
| | Court Number |
| Defendant:  Grand Trio, Inc., a California corporation dba Monterey Pizza | |
| State Case Number<br>11 - 33493    IR | **ORDER, DECISION OR AWARD OF THE LABOR COMMISSIONER** |

1. The above-entitled matter came on for hearing before the Labor Commissioner of the State of California as follows:

    **DATE: March 28, 2008**         ☐ **CONTINUED TO**

    **CITY: 455 Golden Gate Ave. - 10th floor East, San Francisco, CA**

2. IT IS ORDERED THAT: **Plaintiff take nothing by virtue of his/her complaint.**

    $ _____0.00_____ for wages **(with lawful deductions)**

    $ _____ Reimbursable business expenses

    $ _____0.00_____ for interest pursuant to Labor Code Section 98.1

    $ _____0.00_____ for additional wages accrued pursuant to Labor Code Section 203 as a penalty
    *and that same shall not be subject to payroll or other deductions.*

    $ _____ for recovery on dishonored payroll check

    $ _____ other compensation(specify)

    $ _____0.00_____ **TOTAL AMOUNT OF AWARD**

3. The herein Order, Decision or Award is based upon the Findings of Fact, Legal Analysis and Conclusions attached hereto and incorporated herein by reference.
4. The parties herein are notified and advised that this Order, Decision or Award of the Labor Commissioner shall become final and enforceable as a judgment in a court of law unless either or both parties exercise their right to appeal to the appropriate court* within ten (10) days of service of this document. Service of this document can be accomplished either by first class mail or by personal delivery and is effective upon mailing or at the time of personal delivery. If service on the parties is made by mail, the (10) day appeal period shall be extended by five (5) days. For parties served outside of California, the period of extension is longer(See Code of Civil Procedure Section 1013). In case of appeal, the necessary filing fee must be paid by the appellant and appellant must, immediately upon filing an appeal with the appropriate court, serve a copy of the appeal request upon the Labor Commissioner. If an appeal is filed by a corporation, a non-lawyer agent of the corporation may file the Notice of Appeal with the appropriate court, but the corporation must be represented in any subsequent trial by an attorney, licensed to practice in the State of California. Labor Code Section 98.2(b) provides that if the parties seeking review by filing an appeal to the court are unsuccessful in such appeal, the court shall determine the costs and reasonable attorney's fees incurred by the other party to the appeal and assess such amount as a cost upon the party filing the appeal. **PLEASE TAKE NOTICE** that Labor Code Section 98.2 (b) requires that when an employer files an appeal of an Order, Decision or Award of the Labor Commissioner, the employer shall post a bond or undertaking with the court in the amount of the ODA and the employer shall provide written notice to the other parties and the Labor Commissioner of the undertaking. Labor Code Section 98.2 (b) also requires that the bond contain certain other conditions.

\* Superior Court State of California
Court of SF-Limited Civil Jurisdiction
400 McAllister, Room 103
San Francisco, Ca. 94102

**LABOR COMMISSIONER, STATE OF CALIFORNIA**

BY: _/s/ Regina C. Pagalilauan_

**DATED: April 24, 2008**

Regina Pagalilauan          HEARING OFFICER

DLSE 535 (REV 6/89)              ORDER, DECISION OR AWARD OF THE LABOR COMMISSIONER              L.C. 98