1  JOSEPH P. RUSSONIELLO (CABN 44332)
   United States Attorney
2
   BRIAN STRETCH (CABN 163973)
3  Chief, Criminal Division

4  DENISE MARIE BARTON (MABN 634052)
   Assistant United States Attorney
5
   SERGIO PEREZ
6  Law Clerk

7       450 Golden Gate Avenue
        San Francisco, Calif.  94102
8       Telephone:  (415) 436-7359
        Facsimile: (415) 436-7359
9       denise.barton@usdoj.gov

10 Attorneys for Plaintiff

11              UNITED STATES DISTRICT COURT

12            NORTHERN DISTRICT OF CALIFORNIA

13               SAN FRANCISCO DIVISION

14
   UNITED STATES OF AMERICA,        )    CR No. 07-678 JSW
15                                   )
             Plaintiff,              )    MEMORANDUM IN OPPOSITION TO
16                                   )    DEFENDANT'S MOTION TO SUPPRESS
             v.                      )    STATEMENTS FOR VIOLATION OF 5TH
17                                   )    AMENDMENT RIGHT AGAINST SELF-
   GLENIO JESUA FERREIRA             )    INCRIMINATION
18 SILVA,                            )
                                     )    Hearing Date:  August 21, 2008, 2:30 pm
19           Defendant.              )    Courtroom:    Floor 17, Ctrm 2
   _____  )
20

21

22

23

24

25

26

27

28

MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS STATEMENTS FOR
VIOLATION OF 5TH AMENDMENT RIGHT AGAINST SELF-INCRIMINATION, CR 07-678 JSW

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I.      BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

        A.  Statements by the Defendant to Immigration and Customs
            Enforcement.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

            1.      Initial Questioning Regarding Defendant's Ability to
                    Understand and Speak English. . . . . . . . . . . . . . . . . . . . . . . . . . 1

            2.      Administering *Miranda* Warnings. . . . . . . . . . . . . . . . . . . . . . . . 1

            3.      Interview of the Defendant. . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

            4.      The Defendant Did Not Unambiguously Request an Attorney. . . . . 2

            5.      The Defendant Requests an Attorney. . . . . . . . . . . . . . . . . . . . . . 3

            6.      The Defendant Voluntarily Initiated Conversation after
                    Invoking His Right to an Attorney. . . . . . . . . . . . . . . . . . . . . . . . 3

            7.      The Defendant Refuses to Review and Sign His Statement. . . . . . . 3

            8.      The Defendant Again Voluntarily Initiated Conversation
                    after Invoking and Again Being Advised of His Right
                    to an Attorney. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        B.  The Defendant's Fluency in and Ability to Understand English. . . . . . . . . . . 5

            1.      Defendant's Affidavit in English. . . . . . . . . . . . . . . . . . . . . . . . . 5

            2.      Letter from the Defendant's Attorney
                    In Support of Petition. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

            3.      Letter from Former Employer in Support of Petition. . . . . . . . . . . . 5

MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS STATEMENTS FOR VIOLATION OF 5TH AMENDMENT RIGHT AGAINST SELF-INCRIMINATION, CR 07-678 JSW

i

**TABLE OF CONTENTS (Continued)**

PAGE

II. ARGUMENT................................................... 6

    A.    The Defendant's *Miranda* Waiver Was Voluntarily, Knowingly and
           Intelligently Given.............................................. 6

    B.    The Interview of the Defendant Fell Within the Scope
           Of the Miranda Waiver. ...................................... 10

    C.    Defendant Did Not Unambiguously Invoke His Right to Counsel....... 11

    D.    Defendant Initiated Conversation Following His Request
           For Counsel and Knowingly and Voluntarily Waived His Rights. ...... 12

    E.    Defendant Is Not Entitled to an Evidentiary Hearing. ................ 14

III. CONCLUSION................................................. 15

# TABLE OF AUTHORITIES

PAGE

## FEDERAL CASES

*Colorado v. Connelly,*
    479 U.S. 157 (1986)........................................... 6

*Edwards v. Arizona,*
    451 U.S. 477 (1981)........................................... 12

*Miranda v. Arizona,*
    384 U.S. 436, 86 S.Ct. 1602 (1966)............................ 6

*Oregon v. Bradshaw,*
    462 U.S. 1039 (1983).......................................... 12

*United States v. Amano,*
    229 F.3d 801 (9th Cir. 2000).................................. 8

*United States v. Bautista-Avila,*
    6 F.3d 1360 (9th Cir. 1993)................................. 6, 8

*United States v. Bernard S.,*
    795 F.2d 749 (9th Cir. 1986).................................. 6

*United States v. Cazares,*
    121 F.3d 1241 (9th Cir. 1997)................................. 8

*United States v. Crews,*
    502 F.3d 1130 (9th Cir. 2007)................................. 6

*United States v. Davis,*
    512 U.S. 452 (1994)........................................... 11

*United States v. Doe,*
    60 F.3d 544 (9th Cir. 1995)................................. 6, 7

## TABLE OF AUTHORITIES (Continued)

PAGE

*United States v. Garibay,*
    143 F.3d 534 (9th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Heredia-Fernandez,*
    756 F.2d 1412 (9th Cir.1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Howell,*
    231 F.3d 615 (9th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Most,*
    789 F.2d 1411 (9th Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Rodriguez-Lopez,*
    63 F.3d 892 (9th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Shi,*
    525 F.3d 709 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

The United States, by and through its attorney, the United States Attorney for the Northern District of California, hereby opposes the defendant Glenio Silva's Motion to Suppress. For the reasons set forth below, the defendant's Motion should be denied.

## I. BACKGROUND

A. <u>Statements by the Defendant to Immigration and Customs Enforcement</u>

The defendant Glenio Silva was arrested on June 15, 2007 and taken into ICE custody. Early in the morning on June 16, 2007, he was interviewed by Special Agent (SA) Michael Brown and Group Supervisor (GS) Cheryl Peterson at the ICE Offices in San Francisco, California. *Declaration of Michael Brown ("Brown Declaration"),* ¶ 3.

1.   *Initial Questioning Regarding Defendant's Ability to Understand And Speak English*

Prior to conducting the interview, Special Agent Brown asked the defendant if he was comfortable speaking in the English language. The defendant said "yes" and explained to SA Brown that he had been living in the United States for many years. *Brown Declaration*, ¶ 4. SA Brown told the defendant that ICE could call a Portuguese interpreter who could interpret for him via speaker phone. The defendant said that an interpreter would not be necessary. Then, SA Brown told the defendant that if at any time he could not understand him or if he wished to speak to him through an interpreter, he should let him know. *Brown Declaration*, ¶ 4. SA Brown noted that during the interview, the defendant appeared to have no difficulty whatsoever in understanding and responding to his questions in English. He further noted that the defendant did not request an interpreter and never indicated any difficulties in understanding English. *Brown Declaration*, ¶ 5.

2.   *Administering Miranda Warnings*

After confirming that the defendant understood English and did not want an interpreter, SA Brown explained to the defendant that he needed to read him his Miranda

MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS STATEMENTS FOR VIOLATION OF 5TH AMENDMENT RIGHT AGAINST SELF-INCRIMINATION, CR 07-678 JSW
1

1  warnings before proceeding with the interview and read them to him. *Brown*

2  *Declaration*, ¶ 6. SA Brown then asked the defendant if he could read English and

3  Portuguese. The defendant said "yes." *Brown Declaration*, ¶ 6. SA Brown gave him the

4  Record of Sworn Statement cover sheet. *See* Exhibit A, OPPH02458, to *Gruel*

5  *Declaration in Support of Defendant Glenio Silva's Motion to Suppress Statements, ECF*

6  *Docket No. 76.* This Record of Sworn Statement is written in both English and

7  Portuguese. The defendant read and initialed the Sworn Statement. *Brown Declaration*,

8  ¶ 6; Exhibit A, OPPH02458, to *Gruel Declaration in Support of Defendant Glenio Silva's*

9  *Motion to Suppress Statements, ECF Docket No. 76.* . Then, SA Brown asked the

10  defendant if he understood his rights, he said that he did, and he then proceeded to speak

11  to SA Brown and GS Peterson. *Brown Declaration*, ¶ 6.

12              3.       *Interview of the Defendant*

13       After confirming that the defendant understood his rights, SA Brown asked him a

14  number of questions and he responded. *Brown Declaration*, ¶ 7. The questions and

15  answers are set forth in Exhibit 1 to the *Brown Declaration*, OPPH00049-54.

16              4.       *The Defendant Did Not Unambiguously Request An Attorney*

17       After SA Brown asked the defendant a question concerning housing of his

18  employees, the defendant said that he might want a lawyer and asked what SA Brown

19  thought was best - "I think for some of these I might want a lawyer. I'm asking you.

20  What do you think is best?" *Brown Declaration*, ¶ 7. SA Brown explained to him that he

21  could not recommend whether the defendant should consult with a lawyer or not. SA

22  Brown told the defendant that it was his personal decision. SA Brown repeated that he

23  had a right to have a lawyer as initially explained to him. *Brown Declaration*, ¶ 7. The

24  defendant said that he did not understand how this "thing" worked and that he had never

25  had a lawyer before. Then, SA Brown again read the defendant his Miranda rights.

26  *Brown Declaration*, ¶ 7. Thereafter, the defendant asked if there was anything he could

27

28  MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS STATEMENTS FOR
    VIOLATION OF 5TH AMENDMENT RIGHT AGAINST SELF-INCRIMINATION, CR 07-678 JSW
                                                    2

tell SA Brown and GS Peterson that would allow him to go home that night. *Brown Declaration*, ¶ 7. SA Brown explained to the defendant that he had been arrested, and it was not within his discretion to release him. SA Brown told him that he would see a federal judge on Monday and that the judge could allow him to be released on bond. *Brown Declaration*, ¶ 7.

### 5.    *The Defendant Requests An Attorney*

The defendant then asked, in a manner that appeared to be rhetorical to SA Brown, why should he say anything if he was not going to get to go home that night. In response, SA Brown told him that he did not have to speak with them, or he could tell his side of the story. *Brown Declaration*, ¶ 8. The defendant then requested a lawyer. *Brown Declaration*, ¶ 8.

### 6.    *The Defendant Voluntarily Initiated Conversation After Invoking His Right to An Attorney*

Immediately after the defendant requested a lawyer, he made the following unsolicited statement "You guys want to get a terrorist? What's the point?" *Brown Declaration*, ¶ 9. SA Brown did not ask the defendant any questions or make any statements that would have prompted or were intended to prompt this statement from the defendant. *Brown Declaration*, ¶ 9. SA Brown responded to the defendant's unsolicited statement by saying "You know there are rules about hiring people who are allowed to work here. Do you think that this could be a problem?" The defendant said "Yeah." *Brown Declaration*, ¶ 9.

### 7.    *The Defendant Refuses To Review And Sign His Statement*

Upon concluding the interview, SA Brown asked the defendant if he wanted to review his statement for accuracy before concluding the interview. The defendant declined and refused to sign the statement. *Brown Declaration*, ¶ 10. Then, SA Brown terminated the interview. *Brown Declaration*, ¶ 10.

8.    *The Defendant Again Voluntarily Initiated Conversation After Invoking And Again Being Advised Of His Right to An Attorney*

On June 16, 2007, after his interview with SA Brown and GS Peterson, Silva was transported by SA Jason Mackey and SA Christopher Purfeerst from the ICE offices in San Francisco to the Santa Clara Jail.  SAs Mackey and Purfeerst were in the front seat of the vehicle and the defendant was in the backseat during the transport.  *Declaration of Jason Mackey ("Mackey Declaration")*, ¶ 2.  At the time he was transporting the defendant, SA Mackey  knew that the defendant had invoked his right to counsel during an earlier interview with other ICE agents.  Because of this earlier invocation, SA Mackey did not engage in any conversation with the defendant, attempt to speak with him, or seek to elicit any statements from him.  SA Purfeerst also did not engage in conversation with, attempt to speak with, or elicit statements from the defendant while they were transporting him.  *Mackey Declaration*, ¶ 3.  SAs Mackey and Purfeerst did speak with each other during the transport but their conversation was not directed at or regarding the defendant.  *Mackey Declaration*, ¶ 4.

During the transport, the defendant was asking SAs Mackey and Purfeerst questions about his case.  *Mackey Declaration*, ¶ 5.  SAs Mackey and Purfeerst told the defendant that because he had invoked his right to counsel, they could not speak to him, and could not discuss his case.  *Mackey Declaration*, ¶ 5.  Shortly after they advised him in this manner, the defendant looked out the window, gestured to shops, and made the following unprompted utterance - "I employed illegal people and you arrested me.  All these places employ illegal people, what about them?"  *Mackey Declaration*, ¶ 5.  The defendant volunteered this statement.  He did not make this statement in response to a question or a comment made by either SA Mackey or SA Purfeerst.  SAs Mackey and Purfeerst did not make any statement in response to Mr. Silva.  *Mackey Declaration*, ¶ 5.
//

1    B.  The Defendant's Fluency in and Ability to Understand English

2        In 2002, the defendant submitted documentation to the Immigration and

3    Naturalization Service in support of a petition on his behalf.  With that petition, he

4    submitted several supporting documents.  *See  Declaration of Denise Marie Barton*

5    *(Barton Declaration)*, ¶ 2, Exhibits 1-3.

6                    1.    *Defendant's Affidavit In English*

7        On September 1, 2002, the defendant signed an Affidavit in support of his petition.

8    The Affidavit was written in English with no reference to the use of a translator.  *Barton*

9    *Declaration*, Exhibit 1 (OPPH00084).  In the Affidavit, the defendant admits that he first

10   came to the United States in September 1990.  *Barton Declaration*, Exhibit 1, ¶ 1. The

11   defendant also testified that, as of September 2002, he had started a successful business in

12   California; owned two restaurants; and that he had been managing a pizza store in San

13   Francisco, California since 1996.   *Barton Declaration*, Exhibit 1, ¶ 4.

14                   2.    *Letter From The Defendant's Attorney In Support of Petition*

15       In a letter submitted in support of the defendant's petition, his attorney explained

16   that the defendant's wife, with whom he had built his successful businesses in the Bay

17   Area, does not speak Portuguese.  *Barton Declaration*, Exhibit 2, OPPH00093.  The letter

18   also details instances when the defendant has had to telephone emergency services in the

19   Bay Area to assist his wife.   *Barton Declaration*, Exhibit 2, OPPH00092.

20                   3.    *Letter From Former Employer In Support of Petition*

21       In a September 2, 2003 letter, the defendant's former employer, Jerland Farm, in

22   Barron, Wisconsin, addressed his work in the United States and his English-language

23   abilities.  *Barton Declaration*, Exhibit 3, OPPH00086. The defendant worked in an

24   American agricultural farm training program in Wisconsin from February 1990 through

25   August 1991.  During this training, his was tutored in English and was regarded as an

26   excellent student.  *Barton Declaration*, Exhibit 3, OPPH00086.

27

28   MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS STATEMENTS FOR
     VIOLATION OF 5TH AMENDMENT RIGHT AGAINST SELF-INCRIMINATION, CR 07-678 JSW

1

## II.  ARGUMENT

2    A.    The Defendant's *Miranda* Waiver Was Voluntarily, Knowingly and

3          Intelligently Given

4         A waiver of *Miranda* rights must be voluntary, knowing, and intelligent for

5    statements obtained during a custodial interrogation to be admissible.  *Miranda v.*

6    *Arizona*, 384 U.S. 436, 479, 86 S.Ct. 1602 (1966).  The government bears the burden of

7    proving by a preponderance of the evidence that a defendant knowingly and intelligently

8    waived his *Miranda* rights.  *Colorado v. Connelly*, 479 U.S. 157, 168 (1986); *United*

9    *States v. Garibay*, 143 F.3d 534, 536 (9th Cir. 1998).  To satisfy this burden, a written

10   waiver is not required.  The Government may satisfy the burden by introduction of

11   evidence to establish that under the totality of the circumstances, including the

12   defendant's background, experience, and conduct, he was aware of the nature of the right

13   being abandoned and the consequences of his decision to abandon it.  *United States v.*

14   *Crews*, 502 F.3d 1130, 1139-40 (9th Cir. 2007)(holding that the defendant validly waived

15   his *Miranda* rights when he acknowledged he understood and officer read him his rights);

16   *United States v. Doe*, 60 F.3d 544, 546 (9th Cir. 1995) *United States v. Bautista-Avila*, 6

17   F.3d 1360, 1365 (9th Cir. 1993) (juvenile defendant signing a waiver form and indicating

18   he understood demonstrated a valid waiver); *United States v. Bernard S.*, 795 F.2d 749,

19   752 (9th Cir. 1986) ("most importantly, after Bedford explained each of his rights to him

20   in English, appellant stated that he understood his rights."); *United States v. Heredia-*

21   *Fernandez*, 756 F.2d 1412, 1415-1416 (9th Cir.1985) ("Heredia read the form describing

22   his <u>Miranda</u> rights and claimed to understand these rights, subsequently signing the

23   waiver form when asked if he was willing to do so.")

24         The United States has shown, by the uncontraverted evidence, that the defendant

25   did validly waive his *Miranda* rights.  The Record of Sworn Statement, which the

26   defendant signed, had Miranda warnings in both languages. *Gruel Declaration*, <u>Exhibit</u>

27

28
MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS STATEMENTS FOR VIOLATION OF 5TH AMENDMENT RIGHT AGAINST SELF-INCRIMINATION, CR 07-678 JSW

6

A, OPPH02458, *ECF Docket No. 76.*    After reading his rights in both English and

Portuguese, the defendant chose to speak to SA Brown and GS Peterson. *Brown*

*Declaration,* ¶ 6.  The defendant's indication in English, and his signature on the waiver,

substantiate the government's claim that the defendant knowingly and voluntarily waived

his *Miranda* rights.  As acknowledged in the defendant's motion, Silva initialed the

Portuguese-language *Miranda* waiver presented to him. Such an action should not be

treated lightly.  As an experienced businessman in the United States, the defendant

understands the importance and weight of a signature on a legal document. Evidence that

a defendant indicated that he understood his *Miranda* rights after they were explained is

an important factor in determining whether his waiver is valid.  *United States v. Doe*, 60

F.3d 544, 546 (9th Cir. 1995) (waiver valid where defendant indicated he understood his

rights and agreed to speak with officers).  Further, when offered an interpreter, he

declined and advised the agents that he understood English and had lived in the United

States for a long time. *Brown Declaration*, ¶ 4.  Moreover, the defendant's personal

history as the long-standing owner of two businesses in California and the fact that his

wife of many years does not speak English suggests that he has knowledge of the English

language sufficient to validly waive his *Miranda* rights. *See Barton Declaration*, Exhibits

1 and 2.

Contrary to his contention, the defendant, even as a non-native English speaker,

can  validly waive his Miranda rights.  In cases involving foreign nationals, courts assess

voluntariness by examining the totality of circumstances, including whether the defendant

signed a written waiver, whether the advice of rights was in his native language, whether

he appeared to understand, whether he was afforded a translator, whether his rights were

fully explained, and whether he had experience with the criminal justice system.  No one

factor is considered to be determinative. *United States v. Shi*, 525 F.3d 709, 727-29 (9th

Cir. 2008)(upholding denial of motion to suppress confession of Chinese national ; advice

1  of rights was given in Chinese and the defendant appeared to understand); *United States*

2  *v. Amano*, 229 F.3d 801, 804-805 (9th Cir. 2000)(holding that a Japanese-speaking

3  defendant had knowingly and intelligently waived his *Miranda* rights; he was advised of

4  his rights twice; appeared to understand the rights and appeared to understand and

5  converse comfortably in English).

6       In *United States v. Bautista-Avila* 6 F.3d 1360, 1365 (9th Cir. 1993), the Ninth

7  Circuit considered a case in which a Mexican defendant waived his *Miranda* rights and

8  later moved to suppress the testimony on grounds that he had not understood the true

9  ramifications of the action. Despite expert testimony that "for Armenta-Estrada, who had

10  no prior experience with the United States judicial system, had only a sixth grade

11  Mexican education, and had been a manual laborer all his life, 'there is almost an

12  impossibility to grasp abstractions,'" the court ruled that the defendant had waived his

13  rights knowingly and voluntarily. *Id.* at 1665.  In reaching its conclusion, the Ninth

14  Circuit emphasized the fact that *Armenta-Estrada*, much like the current defendant, had

15  indicated that he understood his rights and had submitted voluntarily to questioning. Id. at

16  1666.  Similarly, in *United States v. Cazares*, a Spanish-speaking suspect that was read

17  his *Miranda* rights in English, given a Spanish-language *Miranda* rights card, and

18  interrogated by an English police officer. 121 F.3d 1241, 1244 (9th Cir. 1997). In finding

19  that the district court did not err in admitting the statement, the court emphasized the fact

20  that the defendant gave "an oral indication that he understood his rights" and that his

21  English, while limited, "was sufficiently functional for the purposes of the

22  interrogation."*Id.* at 1244.

23       The defendant is not deficient in English such that it would prevent him from

24  validly waiving his *Miranda* rights.  He came to and worked in the United States since

25  1990; was tutored in English upon his entry; and was reputed to be a good student.

26  *Barton Declaration*, Exhibit 3.  He has been married to a United States citizen who does

27

28
MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS STATEMENTS FOR VIOLATION OF 5TH AMENDMENT RIGHT AGAINST SELF-INCRIMINATION, CR 07-678 JSW

8

1   not speak English for over a decade.   *Barton Declaration*, <u>Exhibits 1 and 2</u>.   He has run

2   two long-standing business in the Bay Area since the early 1990s.   *Barton Declaration*,

3   <u>Exhibits 1 and 2</u>.   Further, SA Brown noted that at all times during the interview, the

4   defendant appeared to understand English; appeared to understand the questions; and had

5   no problems responding to the questions. *Brown Declaration,* ¶ 5.   The level of the

6   defendant's understand is further confirmed by his rhetorical question to SA Brown near

7   that end of the interview why he should say anything if he wasn't going to go home.

8   *Brown Declaration,* ¶ 8.

9          In his Declaration, defense counsel states that from his review of the discovery "it

10  does not appear that the defendant was offered or provided with a Portuguese interpreter

11  when he was interrogated by ICE agents." *Gruel Declaration*, ¶ 3, ECF Docket No. 76.

12  This assertion is directly contradicted by discovery that was provided to the defense early

13  in the case.  *Brown Declaration*, ¶ 4, Exhibit 1, OPPH00050.   In fact, the defendant was

14  offered and declined a Portuguese interpreter.   Specifically, SA Brown asked the

15  defendant if he was comfortable speaking in the English language and the defendant not

16  only responded "yes" but explained that he had been living in the United States. *Brown*

17  *Declaration,* ¶ 4.   SA Brown explained to the defendant that he could have an interpreter

18  via speaker phone; the defendant said that the interpreter would not be necessary.  *Brown*

19  *Declaration,* ¶ 4. Then, SA Brown advised the defendant that if he needed an interpreter

20  at anytime during the interview, to let SA Brown know.  *Brown Declaration,* ¶ 4.

21         All of these facts demonstrate that the defendant voluntarily, knowingly, and

22  intelligently waived his Miranda rights and that his Motion to Suppress should be denied.

23  //

24  //

25  //

26

27

28  MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS STATEMENTS FOR
    VIOLATION OF 5TH AMENDMENT RIGHT AGAINST SELF-INCRIMINATION, CR 07-678 JSW
    9

1
2

    B.    <u>The Interview of the Defendant Fell Within the Scope of the Miranda</u>
<u>Waiver</u>

3        Following the defendant's arrest, ICE agents presented him with and he signed a

4 "Record of Sworn Statement," in English and Portuguese in which he agreed to speak

5 with ICE agents.  *Brown Declaration*, ¶ 6; *Gruel Declaration*, <u>Exhibit A</u>, OPPH02458,

6 *ECF Docket No. 76.*  The Record of Sworn Statement states that the presiding officer

7 desires to take a "sworn statement...[the defendant's] immigration status, *current*

8 *employment*, and identity documents."  *Gruel Declaration*, <u>Exhibit A</u>, OPPH02458, *ECF*

9 *Docket No. 76* (emphasis added).  The defendant's Motion contends that the term "current

10 employment" from the Record of Sworn Statement cannot be construed to encompass the

11 operations of *Monterey Pizza* and *The Pizza House*.  He challenges specific statements -

12 those listed in SA Brown's notes as numbers 14-33[1] - as outside of the scope of this

13 limited waiver. *Gruel Declaration*, <u>Exhibit A</u>, OPPH0260-64, *ECF Docket No. 76.*

14        The United States does not concede that the waiver in the Record of Sworn

15 Statement was a limited *Miranda* waiver as alleged by the defendant.  However, to rule

16 on the defendant's Motion, this Court does not need to reach that issue.  The challenged

17 statements fell within any purported limitation. The term "current employment" cannot be

18 construed as narrowly as the defendant suggests.  Black's Law Dictionary defines

19 employment, in part, as "(2) the act of employing." *Black's Law Dictionary* 712 (18 ed.,

20 2008).  The Merriam Webster Dictionary defines the term "employment" not only as

21 "activity in which one engages and employs his time and energies" but also as "the act of

22 employing someone or something or the state of being employed." *Webster's Third New*

23 *International Dictionary*.   The term "current employment" clearly incorporates the act of

24 hiring and supervising others.  The defendant is the owner and operator of two businesses

25

26        [1] The notes used by defense counsel were incorporated into an official report which has
been set forth as Exhibit 1 to the Brown Declaration.  The challenged statements are more legibly

27 set forth in the *Brown Declaration*, <u>Exhibit 1</u>, OPPH0051-53.

28

1   - his employment duties include hiring and supervising those that work for him. As a

2   business owner, the defendant oversees hiring and hiring procedures for his two

3   establishments. The questions and responses that the defendant wishes to suppress fall

4   squarely within the definition and scope of "current employment" and should not be

5   suppressed.

6        C.    Defendant Did Not Unambiguously Invoke His Right To Counsel

7        The Supreme Court has held that to invoke the right to counsel after a valid

8   *Miranda* waiver, a suspect must unambiguously request a lawyer.  *United States v. Davis*,

9   512 U.S. 452, 459-61 (1994)(holding that defendant's question regarding a lawyer was

10  not a request for counsel that required questioning to stop).  "After a knowing a voluntary

11  waiver of Miranda rights, law enforcement officers may continue questioning until and

12  unless the suspect clearly requests an attorney."  *Id.* at 461 (holding that requiring

13  questioning to stop when the suspect makes a statement that "might" be a request for an

14  attorney is not appropriate).  Defendant did not, as he contends, twice invoke his right to

15  counsel.  He did not invoke his right to counsel until after he asked why he should

16  provide information if he would not be going home if he did cooperate.  *See Brown*

17  *Declaration*, ¶ 8.

18       In *Davis*, similar to the defendant's statement in this case, the defendant said

19  "Maybe I should talk to a lawyer."  Thereafter the interviewing agents in *Davis* advised

20  him of his right to a lawyer, just as SA Brown did with the defendant.  *Davis*, 512 U.S. at

21  455.  *See Brown Declaration*, ¶ 7.  Then, the  interview continued, and the defendant then

22  said "I think I want a lawyer before I say anything else" and the questioning stopped.  *Id.*

23  The Court found that the *Davis* defendant's statement "Maybe I should talk to a lawyer"

24  was not an unambiguous request for counsel.  *Id.* at 462.  The defendant's statement "I

25  think for some of these things I might want a lawyer.  I'm asking you." What do you think

26  is best" is the same type of question that was found not to be not an unambiguous request

27

28  MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS STATEMENTS FOR
    VIOLATION OF 5TH AMENDMENT RIGHT AGAINST SELF-INCRIMINATION, CR 07-678 JSW

1  for counsel in *Davis*.  Accordingly, this Court should not suppress any of the statements

2  made by defendant to SA Brown and GS Peterson in the course of his interview.

3          D.      Defendant Initiated Conversation Following His Request For Counsel and

4                  Knowingly and Voluntarily Waived His Rights

5          The defendant initiated conversation and voluntarily made two statements after

6  invoking his right to counsel.  First, to SA Brown and GS Peterson, he initiated

7  conversation and made the following unsolicited statement "You guys want to get a

8  terrorist?  What's the point?"  *Brown Declaration*, ¶ 9.  SA Brown did not ask the

9  defendant any questions or make any statements that would have prompted or were

10  intended to prompt this statement from the defendant.  *Brown Declaration*, ¶ 9.  SA

11  Brown responded "You know there are rules about hiring people who are allowed to work

12  here.  Do you think that this could be a problem?"  The defendant voluntarily replied

13  "Yeah."  *Brown Declaration*, ¶ 9.  Second, during his transport from the ICE Offices to

14  the Santa Clara jail, the defendant gestured to shops and made the following unprompted

15  utterance - "I employed illegal people and you arrested me.  All these places employ

16  illegal people, what about them?"[2]  *Mackey Declaration*, ¶ 5.  These statements were

17  initiated by the defendant, voluntarily made, and should not be suppressed.

18          Statements made by an accused after invocation of his right to counsel are properly

19  admitted if the accused initiates the conversation and voluntarily waives his right to

20  counsel. *Oregon v. Bradshaw*, 462 U.S. 1039, 1046 (1983); *Edwards v. Arizona*, 451 U.S.

21  477, 484-85 (1981).  In  *Oregon v. Bradshaw*, the Court noted that even if the defendant

22  initiates the conversation, the Government retains the burden to show that the defendant

23  voluntarily waives his rights. 462 U.S. at 1044.  Whether there was a knowing and

24

25          [2] Defendant has not explicitly addressed this second statement to SAs Mackey and
   Purfeerst in his Motion.  However, he does seek to suppress all statements made after invocation
26  of counsel.  To avoid surprise at trial and future motions to suppress that could have been
   resolved in the instant motion, the United States addresses this statement in addition to the one
27  specifically identified by the defendant.

28  MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS STATEMENTS FOR
   VIOLATION OF 5TH AMENDMENT RIGHT AGAINST SELF-INCRIMINATION, CR 07-678 JSW
                                           12

1    voluntary waiver of rights is based on the totality of the circumstances surrounding the

2    waiver.  *Id.* at 1046.  The Ninth Circuit has held that statements under circumstances

3    similar to the defendant's making his statements to the ICE agents should not be

4    suppressed and are admissible.  In *United States v. Rodriguez-Lopez*, the defendant was

5    advised of his *Miranda* rights and invoked his right to counsel.  63 F.3d 892, 893 (9th Cir.

6    1995).  Then, he volunteered an incriminatory statement to the investigating agent.  The

7    agent testified that he did not solicit the statement and did not ask any questions to prompt

8    the statement by the defendant.  The court held that the statement was admissible because

9    the defendant volunteered the statement.  *Id.*; *see also United States v. Most*, 789 F.2d

10   1411, 1416-17 (9th Cir. 1989) (holding that the defendant's unprompted statements

11   following invocation of the right to counsel were initiated by the defendant and not

12   subject to suppression).

13         The defendant initiated conversation with both sets of agents and voluntarily made

14   the challenged statements.   At the ICE Offices, after the defendant invoked his right to

15   counsel, SA Brown did not ask him any further questions.  *Brown Declaration*, ¶ 8.  The

16   defendant chose to make the statement concerning terrorists after he had twice been

17   advised of his right to counsel.  *Brown Declaration*, ¶¶ 6-8.  When SA Brown responded,

18   the defendant, again voluntarily, responded "Yeah."  *Brown Declaration*, ¶ 8.  The

19   circumstances show that the defendant knew that he did not have speak and still, chose to

20   make the statements he did.   The defendant's statement in the car to SAs Mackey and

21   Purfeerst was similarly unprompted and voluntary.  During this transport, the defendant

22   had full knowledge of his rights and had invoked them before SA Brown and GS

23   Peterson.  Nevertheless, he began speaking with SAs Mackey and Purfeerst.   *Mackey*

24   *Declaration*, ¶ 5.  Mindful of his prior invocation, the SAs advised the defendant that he

25   had invoked his right to counsel and that they could not speak to him.   *Mackey*

26   *Declaration*, ¶ 5.  Even with that additional admonishment, the defendant made the

27

28   MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS STATEMENTS FOR
     VIOLATION OF 5TH AMENDMENT RIGHT AGAINST SELF-INCRIMINATION, CR 07-678 JSW

1  incriminatory statement.  He did not make this statement in response to a question or a

2  comment made by either SA Mackey or SA Purfeerst.  SAs Mackey and Purfeerst did not

3  make any statement in response to Mr. Silva.  *Mackey Declaration*, ¶ 5.

4      The defendant initiated the "conversations" that led to the challenged statements.

5  The agents were not questioning him and did not make any statements designed to elicit

6  statements from him.  The totality of the circumstances further demonstrate that the

7  defendant was fully aware of his rights and even with that knowledge, voluntarily made

8  the challenged statements.  Accordingly, these statements should not be suppressed.

9      E.    Defendant Is Not Entitled To An Evidentiary Hearing

10     "An evidentiary hearing on a motion to suppress need be held only when the

11 moving papers allege facts with sufficient definiteness, clarity, and specificity to enable

12 the trial court to conclude that contested issues of fact exist."  *United States v. Howell*,

13 231 F.3d 615, 620 (9th Cir. 2000).  An evidentiary hearing is not permitted to provide the

14 necessary support for defendant's motion.  As set forth above, the defendant has failed to

15 allege with any particularity that his *Miranda* waiver was not knowingly, voluntarily, and

16 intelligently given.  The factual assertions in counsel's declaration concerning the

17 defendant's language inabilities do not - independently - support the motion and are

18 directly refuted by the defendant's actions and the papers that were submitted by and for

19 him to the Immigration and Naturalization Service.  Any remaining, unresolved issues

20 arising from this motion are entirely legal, not factual, and do not require testimony for

21 this Court to rule on the Motion.  For all of these reasons, the defendant is not entitled to

22 an evidentiary hearing on his Motion to Suppress.

23 ///

24 ///

25 ///

26 ///

27

28 MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS STATEMENTS FOR
VIOLATION OF 5TH AMENDMENT RIGHT AGAINST SELF-INCRIMINATION, CR 07-678 JSW
                                  14

### III.  CONCLUSION

For the reasons stated above, the defendant's waiver of his *Miranda* rights was voluntary, knowing and intelligent.  Accordingly, his motion to suppress should be denied.

JOSEPH P. RUSSONIELLO
United States Attorney

DATED: July 22, 2008                    ___/s/_____
                                                        DENISE MARIE BARTON
                                                        Assistant United States Attorney