| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR No. 07-678 JSW |
| Plaintiff, | ) ) ) | DECLARATION OF MICHAEL BROWN |
| v. | ) ) | |
| GLENIO SILVA, | ) ) | |
| Defendant. | ) ) | |

I, Michael Brown, declare the following to be true under pain of perjury:

1. I am a Special Agent with Immigration and Customs Enforcement. I have been an agent for 10 years.

2. I have reviewed the *Motion to Suppress* and *Declaration in Support of the Motion to Suppress* filed by the defendant Glenio Silva. The document attached to the *Declaration of Steven F. Gruel* bearing bates numbers OPPH02458 is the Record of Sworn Statement that was signed by Mr. Silva on June 16, 2007 in my presence. The documents attached to the *Declaration* which bear bates numbers OPPH02459-2466 are the notes of my interview of Mr. Silva. Those notes were made by me while I was interviewing Mr. Silva. Thereafter, I used these notes to prepare the final report, which is attached hereto at Exhibit 1 and bears bates numbers OPPH00049-54.

3. On June 16, 2007, I interviewed Glenio Silva along with Group Supervisor (GS) Cheryl Peterson. Mr. Silva had been arrested on the evening of June 15, 2007 at 599 Monterey Boulevard, San Francisco, California.

4. At the beginning of the interview, GS Peterson and I asked Mr. Silva if he was comfortable speaking in the English language. He said "yes" and explained that he had been living in the United States for many years. I told Mr. Silva that we could call a Portuguese interpreter who could interpret via speaker phone. Mr. Silva said that this would not be necessary. I told him that if at any time he could not understand me or if he wished to speak to me through an interpreter, he should let me know.

5. In the course of the interview, Mr. Silva appeared to have no difficulty whatsoever in understanding and responding to my questions in English. He did not request an interpreter and never indicated any difficulties in understanding English.

6. After confirming that Mr. Silva understood English and did not want an interpreter, I explained to him that I needed to read him his Miranda warnings before proceeding with the interview. I read them to him. I then asked if he could read English and Portuguese. He said "yes." I gave him the Record of Sworn Statement cover sheet which has been bates stamped OPPH02458 and is attached to *Declaration of Steven F. Gruel*. I asked

Mr. Silva if he understood his rights. He said that he did and then proceeded to speak with us. Before speaking with us, Mr. Silva read and initialed the Record of Sworn Statement.

7. After confirming that Mr. Silva understood his rights, I asked him a number of questions and he responded in the manner set forth in my report which has been attached as <u>Exhibit 1</u>. After I asked Mr. Silva a question concerning housing of his employees, he indicated that he may want a lawyer and asked me what I thought was best. I explained to him that I could not recommend whether he should consult with a lawyer or not. I told him that it was his personal decision. I repeated that he had a right to have a lawyer as initially explained to him. Mr. Silva said that he did not understand how this "thing" worked and that he had never had a lawyer before. Then, I read Mr. Silva his Miranda rights.

8. After I read Mr. Silva his Miranda rights, he asked if there was anything he could tell us that would allow him to go home that night. I explained to him that he had been arrested, and it was not within my discretion to release him. I told him that he would see a Federal Judge on Monday and that the judge could allow him to be released on bond. Silva then asked, in a manner that appeared to be rhetorical, why should he say anything if he was not going to get to go home that night. In response, I told him that he did not have to speak with us, or he could tell his side of the story. He then requested a lawyer.

9. Immediately after Mr. Silva requested a lawyer, he made the following unsolicited statement "You guys want to get a terrorist? What's the point?" I did not ask Mr. Silva any questions or make any statements that would have prompted or were intended to prompt this statement from Mr. Silva. I responded to Mr. Silva's statement by saying "You know there are rules about hiring people who are allowed to work here. Do you think that this could be a problem?" Mr. Silva said "Yeah."

10. Next, I asked Mr. Silva if he wanted to review his statement for accuracy before concluding the interview. He declined and refused to sign the statement. Then, I terminated the interview.

EXECUTED THIS 21 DAY OF JULY 2008.

_____
Special Agent Michael Brown

DECLARATION OF MICHAEL BROWN, CR 07-678 JSW