# EXHIBIT 1

REQUESTED BY: PURFEERST, CHRISTOPHER M
O F F I C I A L   U S E   O N L Y

| DEPARTMENT OF HOMELAND SECURITY ICE | TECS ACCESS CODE 3 |
|---|---|
| REPORT OF INVESTIGATION | PAGE 1 |
| | CASE NUMBER ████████ |

| TITLE: THE HOUSES OF PIZZA AND THE HARBORING OF ILLEGAL ALIENS. |
|---|
| CASE STATUS:    INTERIM RPT |

| REPORT DATE | DATE ASSIGNED | PROGRAM CODE | REPORT NO. |
|---|---|---|---|
| 062207 | 102506 | 6L4 | 027 |

RELATED CASE NUMBERS:

COLLATERAL REQ:

TYPE OF REPORT:
INVESTIGATIVE FINDINGS

TOPIC: INTERVIEW OF GLENIO SILVA (A79 628 043), JUNE 16, 2007

SYNOPSIS:
On September 25, 2006 the Immigration and Customs Enforcement San Francisco, Office of the Special Agent-in-Charge received information concerning Brazilian citizens who may have entered the United States and overstayed their tourist visas. ICE Agents are investigating the nature and scope of the possible violations.

On June 16, 2007, ICE agents conducted a custodial interview of Glenio Jesus Ferreira SILVA (A79 628 043) at 630 Sansome Street, San Francisco, California.

| DISTRIBUTION: | SIGNATURE: | |
|---|---|---|
| SACSF CASQ | BROWN        MICHAEL | SPECIAL AGENT |
| | APPROVED: | |
| | PETERSON     CHERYL | OI GRP SUPERVISOR |
| | ORIGIN OFFICE: SF SAN FRANCISCO, CA - | TELEPHONE: 415 705 4556 |
| | | TYPIST: BROWN |

O F F I C I A L   U S E   O N L Y
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

OFFICIAL USE ONLY

| DEPARTMENT OF HOMELAND SECURITY<br>ICE | PAGE 3 |
|---|---|
| REPORT OF INVESTIGATION<br>CONTINUATION | CASE NUMBER ▮▮▮<br>REPORT NUMBER: 027 |

On June 16, 2007, I along with Group Supervisor C. Peterson interviewed Glenio Jesus Ferreira SILVA (A79 628 043).

ICE agents had arrested SILVA during the course of a search warrant executed during the evening of June 15, 2007 at Monterey Pizza located at 599 Monterey Blvd., San Francisco, California. The United States District Court, Northern District of California had issued arrest warrant 3-07-70345 BZ for SILVA for violations of title 8 USC 1324(a).(1)(A)(iii) (harboring aliens).

Sr. Special Agent Scott Lee and I transported SILVA without incident from the warrant site to ICE offices at 630 Sansome Street, San Francisco, California arriving at 8:19 p.m.

At 12:50 a.m., GS Peterson and I interviewed SILVA in the interview rooms located on the 6th floor of 630 Sansome Street. We identified ourselves to him by name and agency and showed him our credentials.

We asked SILVA if he was comfortable speaking in the English language. He said, "yes" and explained that he had been living in the United States for many years. I told SILVA that we could call a Portuguese interpreter who could interpret via speakerphone. SILVA said that this would not be necessary. I told him that if at any time he could not understand me or if he wished to speak to me through an interpreter, he should let me know.

NOTE: throughout the course of the interview, SILVA appeared to have no difficulty whatsoever in understanding and responding to my questions in English. He did not request an interpreter and never indicated any difficulties in understanding English.

I then explained to SILVA that I needed to read him his Miranda warnings before proceeding. I read them to him. I then asked if he could read English and Portuguese. He said, "yes". I gave SILVA the record of sworn statement cover sheet which had Miranda warnings printed in English and Portuguese. SILVA read these. I asked if SILVA understood his rights. He said that he did and agreed to speak with us. He stated the following:

Q: What is your name?
A: Glenio Jesus F. Silva.

Q: What is your date of birth?
A: September 2, 1968.

Q: Where were you born?

OFFICIAL USE ONLY
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

OFFICIAL USE ONLY

| DEPARTMENT OF HOMELAND SECURITY ICE | PAGE 4 |
|---|---|
| REPORT OF INVESTIGATION CONTINUATION | CASE NUMBER ▓▓▓▓▓ |
| | REPORT NUMBER: 027 |

A: D.F., Brasilia, Brazil.

Q: When did you first come to the United States?
A: I went to Wisconsin around 1990 for agricultural job training.

Q: What is your current immigration status?
A: I have a green card.

Q: Where do you work?
A: In my business. My two pizzerias.

Q: Is one named Monterey Pizza on Monterey Boulevard in San Francisco?
A: Yes.

Q: What is the name of the second pizzeria?
A: Pizza House.

Q: Where is that located?
A: Hayward, California.

Q: Are you the owner?
A: Yes.

Q: How long have you owned the pizzerias?
A: Monterey Pizza about ten years. Hayward Pizza about three years.

Q: Does anyone else own the two businesses?
A: Yes. I have help . . . people who finance. They help me.

Q: They don't work at the locations?
A: No.

Q: Do you hire the employees?
A: Two people work at Monterey Pizza.

Q: Did you hire the two people at Monterrey?
A: Yes.

Q: Are there others who work there?
A: I work there, and we are having a problem with another kid going to school.

Q: What are the names of the two employees that we brought in today?
A: Fabio and I don't remember the name of the other kid. Like I said, we hired him now.

OFFICIAL USE ONLY
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

OFFICIAL USE ONLY

| DEPARTMENT OF HOMELAND SECURITY ICE | PAGE 5 |
|---|---|
| REPORT OF INVESTIGATION CONTINUATION | CASE NUMBER: ▓▓▓▓▓▓ |
| | REPORT NUMBER: 027 |

Q: Do you mean that you hired him recently?
A: Yes.

Q: What kinds of identification did he show you when you hired him?
A: Today was the day I was going to talk to him. I'm not lying. I don't even know his name. The week before, I was at Hayward.

Q: Had you talked with him before?
A: No.

Q: When was he hired?
A: Maybe less than one week. This is the problem. One day someone works for you. The next day they don't call or show up. They don't say anything.

Q: Has the new guy been paid yet?
A: I need to talk to Fabio to find out.

Q: When was Fabio hired?
A: About one year.

Q: Did you hire him?
A: No. At that time I used to have a manager. He used to take care of everything. He's been gone for about four months. The business doesn't generate enough money.

Q: Since the manager left about four months ago, have you managed the Monterey Pizza store?
A: Yes. He left about four months ago. To be honest, I'm lost in time. Is this because they are illegal? I see you're Immigration, and I get the point.

Q: Is Fabio here illegally?
A: Yes. You arrested him.

Q: What do you think?
A: You already booked him. I'm not going to say something you don't already know.

Q: Did you check his immigration status when hiring him?
A: No.

Q: So you never asked him about his immigration status?
A: No. I never asked him.

Q: Do you have I-9 forms for your employees? It is a form where an employee shows you identification and it helps determine if they can work in the United

OFFICIAL USE ONLY

THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

OFFICIAL USE ONLY

| DEPARTMENT OF HOMELAND SECURITY ICE | PAGE 6 |
|---|---|
| REPORT OF INVESTIGATION CONTINUATION | CASE NUMBER: [redacted] |
| | REPORT NUMBER: 027 |

States?
A: No. I don't have them. I don't know if this is going to complicate my life. It's your judgment.

When I came to this country, I came here for job training. Something bad happened at home, so I stayed. Then I met my wife, so I needed a job. So I started making pizzas. I had to feed my two children. I don't know about these big problems like buildings blowing up. I'm just trying to feed my children. Maybe everything I'm saying will put me in jail, but I'm not a terrorist. You eat in the city. You know who works in the restaurants and hotels. Maybe I was born in the wrong part of the world where people make divisions. I'm getting emotional and worrying about my kids.

Q: How did you pay your employees?
A: I paid them in cash.

Q: How often?
A: Usually at the end of the day.

Q: Did you arrange for their housing?
A: I think for some of these I might want a lawyer. I'm asking you. What do you think is best?

NOTE: at this point I explained that I could not recommend whether SILVA should consult with a lawyer or not. I told him that it was his personal decision. I repeated that he had a right to have a lawyer as initially explained to him. SILVA stated that he did not know how this "thing" worked. He never had a lawyer before. At this point, I read through the points of Miranda again.

SIVLA asked if there was anything that he could tell us that would allow him to go home that night. I explained that he had been arrested, and it was not within my discretion to release him. I told him that he would see a Federal Judge on Monday morning and that the judge could allow SILVA to be released on bond. SILVA asked rhetorically why should he say anything if he was not going to get to go home that night. I told him that he did not have to speak with us, or he could tell us his side of the story. SILVA then requested a lawyer. SILVA then spontaneously asked the following: "You guys want to get a terrorist? What's the point?" To this I responded as follows:

Q: You know there are rules about hiring people who are allowed to work here. Do you think that this could be a problem?
A: Yeah.

I asked SILVA if he wanted to review his statement for accuracy before

OFFICIAL USE ONLY

THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

OFFICIAL USE ONLY

| DEPARTMENT OF HOMELAND SECURITY ICE | PAGE 7 |
|---|---|
| REPORT OF INVESTIGATION CONTINUATION | CASE NUMBER ▓▓▓▓▓▓▓ |
| | REPORT NUMBER: 027 |

concluding the interview. He declined and refused to sign the statement. At this point I concluded the interview (1:45 a.m.).

OFFICIAL USE ONLY
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

OPPH00054